PRINCE GEORGE'S COUNTY,
MARYLAND, Petitioner,

v.

UNITED STATES DEPARTMENT OF
LABOR, Respondent.

No. 83–1245.

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 30, 1983.

Decided Oct. 20, 1983.

Robert H. Drummer, Associate County Atty., Upper Marlboro, Md. (Thomas P. Smith, County Atty., Hyattsville, Md., Michael O. Connaughton, Deputy County Atty., Upper Marlboro, Md., on brief), for petitioner.

Francis P. Buckley, Washington, D.C. (Francis X. Lilly, Deputy Sol. of Labor, William H. DuRoss, III, Associate Sol., for Employment and Training, Harry L. Sheinfeld, Washington, D.C., Counsel for Litigation on brief), for respondent.

Before WINTER, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Prince George's County, Maryland, seeks review of a decision of the Secretary of Labor imposing a monetary penalty on it for an alleged violation of a regulation prohibiting nepotism in hiring promulgated pursuant to the now superseded Comprehensive Employment and Training Act (CETA), as amended, 29 U.S.C. § 817(a).[1] We sustain both the imposition and the amount of the penalty.

I.

Prince George's County operated an employment and training program as a prime sponsor. 29 U.S.C. § 812. It thus received federal funds to finance its program and became subject, not only to the provisions of CETA, but also to the regulations of the Secretary promulgated as necessary to implement CETA. 29 U.S.C. § 982. One of those regulations is 20 C.F.R. § 676.66 proscribing nepotism in employment. Succinctly stated, it prohibits an employing agency from hiring two members of an immediate family when one member is in an administrative capacity and their salaries are funded under CETA.[2]

The operative facts were stipulated: J. Max Campos and Eileen Campos are hus-

---

[1] CETA has been replaced by the Job Training Partnership Act (JTPA), Pub.L. 97–300, 96 Stat. 1322, but pending cases continue to be adjudicated under CETA. *See* § 181(e) JTPA, 96 Stat. 1355.

[2] The pertinent parts of the Regulation follow:

§ 676.66 Nepotism

(a) *Restriction.* No recipient, subrecipient, or employing agency may hire a person in an administrative capacity, staff position, public service employment position, or on-the-job training position funded under the Act if a member of that person's immediate family is engaged in an administrative capacity for that recipient, subrecipient, or employing agency.

(b) No subrecipient or employing agency may hire a person in an administrative capacity, staff position, public service employment position or on-the-job training position funded under the Act, if a member of that person's immediate family is engaged in an administrative capacity for the recipient or program agent from which that subrecipient or employing agency obtains its funds. To the extent that an applicable State or local legal requirement regarding nepotism is more restrictive than this provision, such State or local requirement shall be followed (section 123(g)).

(c) For purposes of this section: (1) The term "immediate family" means wife, husband, son, daughter, mother, father, brother, brother-in-law, sister, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, aunt, uncle, niece, nephew, step-parent, and stepchild.

(2) The term "person in an administrative capacity" includes those persons who have overall administrative responsibility for a program, including all elected and appointed officials who have any responsibility for the obtaining of and/or approval of any grant funded under the Act, as well as other officials who have influence or control over the administration of the program, such as the project director, deputy director and unit chiefs, and persons who have selection, hiring, placement or supervisory responsibilities for public service employment or OJT participants. Persons who are economically disadvantaged and serving on the prime sponsor's planning council, youth council, PIC, or State employment and training council shall not be considered persons in an administrative capacity.

.    .    .    .    .

band and wife. Prior to April 5, 1981, they had been employees of Prince George's County for many years. On April 5, 1981, Mr. Campos was employed as Chief, Independent Monitoring Unit, a CETA position. On that date, ironically over her opposition and without the prior knowledge of Mr. or Mrs. Campos, Mrs. Campos was transferred from a non-CETA position to the position of Administrative Assistant I to the CETA Director, a CETA position.

Thereafter, Mr. Campos was transferred from his CETA position to a non-CETA position on September 12, 1981. During the period (April 5—September 12, 1981) that he and his wife were both in CETA positions, Mrs. Campos was paid $12,212 in salary and fringe benefits. Mrs. Campos was scheduled to retire from county employment on August 1, 1982. During the period April 5, 1981 until the date of her retirement, she would have been paid approximately $40,000 in salary and fringe benefits.

Because Mr. and Mrs. Campos were simultaneously both in CETA positions, the Secretary, acting through an Administrative Law Judge, determined that they occupied these positions in violation of 20 C.F.R. § 676.66 and that the County should be denied reimbursement for the compensation paid to Mrs. Campos. Although the County contended that its monetary loss should be confined to the period during which both were CETA employees, the ALJ ruled that the penalty should be the aggregate amount that was paid Mrs. Campos from the date that her employment first violated the regulation until the date of her retirement.

## II.

Prince George's County first contends that the transfer of Mrs. Campos to a CETA position did not violate the regulation because it was not a "hire" and because Mr. Campos was not employed in an "administrative capacity."

■ Before discussing the application of the regulation, we consider first the County's challenge to its validity. We think the regulation is valid. Section 825(g) of Title 29, U.S.C., specifically empowers the Secretary to promulgate such regulations "as are necessary to assure against program abuses including, but not limited to, nepotism." While the regulation does extend beyond the commonly accepted definition of nepotism, we think that it represents a reasonable implementation of Congress's stated policy. See Red Lion Broadcasting Co., Inc. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (regulation is valid if it represents a reasonable means to implement statutory policy). A per se proscription on familial employment is reasonable since it avoids the administrative difficulty of applying a standard that requires a showing that improper influence in hiring was actually exercised. See e.g., Orange County v. Dept. of Labor, 636 F.2d 889 (2 Cir.1980) (upholding the validity of a similar earlier regulation).

■ The regulation does not define "hire", and the County argues that the transfer into the CETA program of an employee who has been long employed by the County in a similar position should not constitute a "hire" since there is little danger that the transfer is a result of nepotism, the evil sought to be prevented by the regulation. We reject the argument. First, the Secretary's interpretation of his own regulation is of "controlling weight unless plainly erroneous or inconsistent with the regulation." Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). That employment in a CETA program constitutes a "hire", regardless of the position from which the employee is drawn, seems a natural interpretation of the regulation. Second, this construction of "hire" is a reasonable one to prevent circumvention of the nepotism prohibition by the simple artifice of first employing an individual in a non-CETA position and then transferring that individual into the CETA program.

■ Similarly, we reject the argument that Mr. Campos was not employed in an administrative capacity. It is true that he was a "unit chief"; but the only function

of this unit was oversight of the CETA program, and he had no direct authority to affect employment decisions. Rather he reported to a superior, such as the CETA director, who would act on his recommendations. But here again the Secretary's interpretation of the regulation is controlling because it is a reasonable one. An evil-minded overseer could easily compel the employment of a relative by threatening an unfavorable report. Moreover, the regulation makes plain that the authority to hire is not a prerequisite to being an administrative official.

### III.

■ Having concluded that the employment of Mrs. Campos was correctly determined to be a violation of the regulation, we turn to the amount of the penalty which was imposed. The County argues that since no finding was made that Mr. Campos improperly influenced the transfer of Mrs. Campos to the CETA program, the taint, stemming from violation of the regulation, was removed once he left his CETA position; and therefore the forfeiture of reimbursement for Mrs. Campos's salary should cease on that date.

Once again we do not agree. The regulation does not provide that its infraction ceases when one of the two related CETA employees leaves his position. The infraction is in the hiring and the infraction continues as long as that employee is on the CETA payroll. We think that such an interpretation is justified, both to prevent a soon-retiring CETA administrator from bestowing a parting favor on a member of his family and also to cure the appearance of impropriety that familial ties led to the initial hiring of the relative.

AFFIRMED.