**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 30 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GEORGE M. DAVIDSON,

      Plaintiff - Appellant,

  v.

AMERICA ONLINE, INC., a Virginia
corporation,

      Defendant - Appellee.

No. 01-4253

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 1:99-CV-00138-ST)**

---

Stephen P. Horvat of Anderson & Karrenberg, Salt Lake City, Utah, for the
Plaintiff-Appellant.

Gregory W. Stevens of Salt Lake City, Utah, for the Defendant-Appellee.

---

Before **LUCERO**, **HARTZ** and **ROBINSON**[*], Circuit Judges.

---

**ROBINSON**, District Judge.

---

    [*] The Honorable Julie A. Robinson, United States District Judge for the
District of Kansas sitting by designation.

Plaintiff George Davidson sued America Online, Inc. ("AOL") for an alleged violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213. Plaintiff, who is deaf, alleges that AOL failed to hire or consider him for employment because of his disability. The United States District Court for the District of Utah granted summary judgment in favor of AOL, and plaintiff appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's decision that one of plaintiff's claims of discrimination is time-barred. On his remaining claim, however, we conclude that plaintiff made out a prima facie case of discrimination under the ADA and therefore reverse.

## STANDARD OF REVIEW

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services, 165 F.3d 1321, 1326 (10th Cir.) (citation omitted), cert. denied, 528 U.S. 815, 120 S.Ct. 53, 145 L.Ed.2d 46 (1999). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 165 F.3d at 1326 (citation omitted). The nonmovant is given "wide berth to prove

a factual controversy exists." Jeffries v. State of Kan., 147 F.3d 1220, 1228 (10th Cir. 1998) (quoting Ulissey v. Shvartsman, 61 F.3d 805, 808 (10th Cir. 1995)).

## BACKGROUND

AOL provides online and interactive computer services. AOL maintains a Call Center in Ogden, Utah where AOL "Customer Care Consultants" handle communications to and from members, in various forms, including voice telephone, mail, e-mail, Instant Message and text telephone services for the deaf. AOL staffs its Call Center with "voicephone" and "non-voicephone" positions. Voicephone positions and non-voicephone positions have the same pay level, benefit level and seniority levels. Most of the work at the Ogden Call Center is done by "Technical Consultants" who communicate with AOL members solely by voice telephone. AOL members are able to call through an inbound toll free number.

During the period from March 1996 through October 1996, AOL hired seven deaf persons from outside AOL for non-voicephone positions, handling mail and e-mail communications. In 1997, AOL opened a Call Center in the Philippines, purportedly to take advantage of inexpensive labor costs. The Philippines Call Center primarily handled non-voicephone communications. As a result, AOL adopted a policy of not hiring external job applicants to fill any non-voicephone positions. After this change, only voicephone positions were available to external job applicants. While no deaf employees were discharged as

a result of this policy, AOL concedes that under this policy, a deaf person will no longer be considered for employment at AOL. External job applicants hired for voicephone positions are sometimes transferred to non-voicephone positions within two to three weeks after they are hired.

Davidson, who is deaf, applied for a job at AOL in September 1997 and November 1998. Davidson was acquainted with some of the deaf employees hired externally by AOL in 1996. At the times Davidson applied, AOL was hiring externally for voicephone positions. Davidson submitted a cover letter, application and resume that stated he was applying for any position that did not require speaking on the telephone. When he did not hear back after submitting his first application, Davidson contacted AOL and was told that all available positions had been filled. Davidson claims that when he applied again in 1998, AOL human resources personnel told him that AOL had changed its hiring policy to limit non-voicephone positions to internal hires, no longer hired deaf people, and would not hire him because he was deaf.

While Davidson's application was pending in 1997, AOL transferred approximately 20 employees from voicephone positions into non-voicephone positions at the Ogden Call Center. After Davidson applied and was rejected again in 1998, he was told by AOL that non-voicephone positions had been filled by internal transfer that very week.

Davidson filed an administrative claim with the state agency on January 7,

-4-

1999.  Upon referral, the EEOC issued a Notice of Right to Sue.  On December 2, 1999, Davidson filed suit, alleging that AOL discriminated against him in violation of the ADA.  On AOL's motion for summary judgment, the district court dismissed Davidson's Complaint, concluding (1) the claim regarding the September 1997 incident was time-barred; (2) Davidson failed to establish a prima facie case of discrimination because he was not "qualified, with or without reasonable accommodation, to perform the essential functions of the positions that were offered to and open for external hires"; and (3) it would be an unreasonable accommodation to force AOL to restructure its hiring practices as requested by Davidson.  Davidson appeals.

**DISCUSSION**

I.      *Continuing Violation*

Davidson filed suit on the basis of AOL's refusal to consider him for employment on two occasions: in September 1997 and November 1998.  He filed his administrative claim for both actions on January 7, 1999.  Incorporating the procedural rules of Title VII, the ADA requires an individual to file a timely administrative claim within 300 days[1] of the challenged action.  42 U.S.C. § 12117(a); § 2000e-5.  The filing is a prerequisite to a civil suit under Title VII

---

[1] In states in which a state agency has authority to investigate employment discrimination ("deferral states"), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).  Utah is a deferral state.

and a claim is time-barred if it is not filed within these time limits. Bullington v. United Air Lines Inc., 186 F.3d 1301, 1310 (10th Cir. 1999) (citing Aronson v. Gressly, 961 F.2d 907, 911 (10th Cir. 1992)). Davidson's administrative claim was filed more than 300 days after the September 1997 failure to hire.

Davidson attempted to avoid this apparent untimeliness by invoking the continuing violation doctrine. We have held that, under proper circumstances, a plaintiff may recover for discriminatory acts that occurred prior to the statutory limitations period if they are "part of a continuing policy or practice that includes the act or acts within the statutory period." Macheroni v. Board of Regents of the Univ. of Cal., 28 F.3d 1554, 1561 (10th Cir. 1994) (quoting Martin v. Nannie & the Newborns, Inc., 3 F.3d, 1410, 1415). A plaintiff may establish a continuing violation by showing either that (1) a series of related acts was taken against him, with one or more of those acts occurring within the limitations period, or (2) the defendant maintained a company-wide policy of discrimination both before and during the limitations period. Bennett v. Quark, Inc., 258 F.3d 1220, 1227 (10th Cir. 2001) (citation omitted). The district court concluded that Davidson failed to make the necessary showing under either of these tests. Davidson maintains on appeal that the continuing violation doctrine applies under both approaches.

Davidson argues that the continuing violation doctrine is applicable to this case because the two refusals to hire were part of a series of related acts. In analyzing whether alleged discriminatory acts are sufficiently related to constitute

-6-

a continuing violation or whether such acts are discrete acts which must be regarded as individual violations, we have used a three-part inquiry to determine whether there was a continuing violation: "(i) subject matter–whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence–whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.'" Macheroni, 28 F.3d at 1561 (quoting Martin, 3 F.3d at 1415)). We have noted that the continuing violation doctrine "is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." Bullington, 186 F.3d at 1311 (quoting Martin, 3 F.3d at 1415 n. 6). Thus, we have held that a continuing violation claim fails "if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred." Id.

Subsequent to the district court's decision, the Supreme Court revised the standard courts must apply in determining the timeliness of Title VII claims. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 1601 (2002). Where a change in law occurs while a case is on appeal, we apply the law in effect at the time of our decision. Miller v. City of Mission, 705 F.2d 368, 377 (10th Cir. 1983). We can find no basis upon which to restrict the

Court's holding to Title VII, and we therefore conclude that the Court's reasoning in Morgan must be applied to cases brought under the ADA.

In Morgan, the Supreme Court held that a continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire. 536 U.S. at 114. The Court concluded that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." Id. at 111. Instead, the Court held that a discrete retaliatory or discriminatory act "occurred" on the day that it "happened." Id. at 110. Thus, a claimant must file a charge of discrimination within the appropriate limitations period as to each such discrete act of discrimination that occurred. Id. The Court further emphasized that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Id. at 113. Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id.[2]

By contrast, the Supreme Court held that "[h]ostile work environment claims are different in kind from discrete acts." Morgan, 536 U.S. at 115. The Court expressly held that the date on which a plaintiff becomes aware that he or

_____

[2] The Court noted, however, that the statute does not bar an employee from using time-barred acts as background evidence in support of a timely claim. Morgan, 536 U.S. at 113.

-8-

she has an actionable Title VII claim is of no regard in the context of determining the timeliness of a hostile work environment claim. Id. at 117 n. 11. Key to the Court's ruling was its determination that the series of acts constituting a hostile work environment constitute only one unlawful employment practice. Id. at 118. We recently held that Morgan implicitly overruled Bullington, Martin and other Tenth Circuit cases to the extent these cases held that recovery on a Title VII hostile work environment claim is not available for acts taken outside the statutory time period where the plaintiff knew or should have known the conduct was discriminatory when the acts occurred. Boyer v. Cordant Technologies, Inc., 316 F.3d 1137 (10th Cir. 2003).

By eliminating the continuing violation doctrine for discrete discriminatory acts, Morgan attempts to resolve the inconsistent and confusing application of the doctrine by the appellate courts. The Court reversed the Ninth Circuit's application of its continuing violation doctrine to Morgan's discrimination claim. Under the Ninth Circuit formulation, the continuing violation doctrine was applicable as long as the time-barred conduct was sufficiently related to the timely conduct, without regard to whether plaintiff was aware of the need to assert his rights. Douglas v. California Dept. of Youth Auth., 271 F.3d 812, 824 n. 13 (9th Cir. 2001) (citation omitted). By contrast, the Third, Fifth, Sixth and Eleventh Circuits, along with this Court, applied the three-factor test that focused on whether the nature of the violation should trigger an employee's awareness of

the need to assert his rights. See Martin, 3 F.3d at 1415 and n. 6; West v. Philadelphia Elec. Co., 45 F.3d 744, 755 n. 9 (3rd Cir. 1995); Berry v. Board of Supervisors, 715 F.2d 971 (5th Cir. 1983); Bell v. Chesapeake & Ohio Ry., 929 F.2d 220, 223-25 (6th Cir. 1991); Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 801 (11th Cir. 1998). A third formulation adopted by the Seventh Circuit, applied the doctrine to cases where it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct. Galloway v. Gen. Motors Serv. Parts Operations, 78 F.3d 1164, 1167 (7th Cir. 1996).

We must conclude from Morgan's holdings that when a plaintiff pursues several disparate treatment claims based on discrete discriminatory acts, the limitations period will begin to run for each individual act from the date on which the underlying act occurs. Accordingly, Morgan implicitly overturns prior Tenth Circuit law in that plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period. Accord Sharpe v. Cureton, 319 F.3d 259, 268 (6th Cir. 2003).

Under Morgan, it is clear that the 1997 and 1998 refusals to hire are discrete acts. See 536 U.S. at 114 (specifically identifying refusals to hire as easily identified discrete acts). Each discrete refusal to hire is a separate actionable unlawful employment practice that "starts a new clock for filing a

-10-

charge alleging that act." Id. at 113. Thus, Davidson is limited to filing a claim for the refusals to hire that "occurred" within the appropriate time period. Id. at 114.

This remains true even if the discrete act was part of a company-wide or systemic policy[3]. Davidson's allegation that the discrete refusals to hire were undertaken pursuant to AOL's discriminatory hiring policy does not extend the statutory limitations period. Cherosky v. Henderson, ---F.3d---, 2003 WL 21286574 (9th Cir. 2003). Davidson chose to bring separate claims based on discrete discriminatory acts. The essence of his complaint does not stem from the hiring policy, but rather from the individualized refusals to hire that resulted from implementation of the policy. His assertion that these discrete acts flow from a company-wide or systemic discriminatory practice will not succeed in establishing AOL's liability for acts occurring outside the limitations period because the Morgan Court determined that each incident of discrimination constitutes a separate actionable unlawful employment practice. Id. (citing Lyons v. England, 307 F.3d 1092, 1107 (9th Cir. 2002)).

The Morgan Court wrote, "[w]e have repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a

---

[3]The question of how Title VII's filing deadlines should be applied to pattern-or-practice claims based on a series of discriminatory acts, some of which occurred outside the limitations period, has been left unanswered by the Court, and we do not consider it here. Morgan, 536 U.S. at 115 n. 9.

-11-

connection to other acts." 536 U.S. at 111. As an example, the Court cited Bazemore v. Friday, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), in which the Court considered a pattern-or-practice challenge to a discriminatory salary structure. Id. The Court stated that the Bazemore Court "noted that although the salary discrimination began prior to the date that the act was actionable under Title VII, '[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII.'" Id. at 112 (citation omitted). Similarly, the alleged wrong in this case occurred when the hiring policy was invoked to deny Davidson employment.

Thus, we affirm the district court's finding that Davidson's 1997 refusal to hire claim is time-barred.

*Discovery Rule*

Davidson argues that his case differs from Morgan because until he learned of AOL's hiring policy when he was denied employment for a second time in November 1998, he had no way of knowing AOL's reason for refusing to hire him in September of 1997. By invoking the so-called "discovery rule," Davidson argues that his 1997 claim of discrimination did not accrue until he discovered AOL's reason for refusing to hire him–the discriminatory hiring policy. In Morgan, the Supreme Court left open the issue of claim accrual: "[t]here may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time

-12-

begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered." 536 U.S. at 114 n. 7. The Court also noted that such claims remained subject to equitable doctrines including tolling and estoppel. Id. at 113.

Davidson does not claim he was unaware that he had not been hired by AOL in September 1997. Rather, he claims that he did not discover the existence of AOL's discriminatory hiring policy until November 1998, and that the statute should start to run on this date. Davidson argues that the continuing violation doctrine operates as a discovery rule, and that Morgan does not foreclose its application. However, outside the context of the continuing violation doctrine, this Circuit's precedent on claim accrual in discrimination cases does not support Davidson's position.

In Hulsey v. Kmart, Inc., we held that a cause of action accrues under the Age Discrimination in Employment Act (ADEA) on "the date the employee is notified of an adverse employment decision" by the employer. 43 F.3d 555, 557 (10th Cir. 1994) (citing Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988) (citing Delaware State College v. Ricks, 449 U.S. 250, 256-59, 101 S.Ct. 498, 503-04, 66 L.Ed 2d 431 (1980)). In Hulsey, the plaintiffs were demoted from their positions and transferred to different stores. Two years later, the plaintiffs viewed a television program, "A Current Affair," which purportedly revealed that their demotions were motivated by age discrimination. The

plaintiffs thereafter filed suit and argued that their cause of action did not accrue until the time that they watched the television program. We rejected their argument, holding that:

> A cause of action accrues under the Age Discrimination in Employment Act ("ADEA") on the date the employee is notified of an adverse employment decision. *Generally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer.* It is undisputed that the allegedly discriminatory actions by Kmart against Employees were the demotions and transfers. As such, Employees' cause of action accrued on the dates Kmart notified them of their new assignments.

Hulsey, 43 F.3d at 557 (emphasis added) (quotations omitted).

In Bennett v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999), employees who took early retirement packages argued that their discrimination claims under the ADEA did not arise until the date that the employer hired its first replacement employee. Applying Hulsey, we rejected this argument, holding that because the employees' claims were for constructive discharge, their claims accrued on the date the discharge occurred, stating, "[w]hile the hiring of new, younger employees might be evidence of Coors' alleged discriminatory intent at the time appellants left Coors, it is the alleged discriminatory 'discharge' that appellants seek to redress." Id. at 1235.

Applying Hulsey and Bennett, Davidson's first refusal to hire claim began to accrue in September 1997, when AOL communicated to him that his first job

-14-

application was rejected. According to Davidson, he did not file an EEOC charge in September 1997, because he was merely told that "all available positions had been filled." Despite his inquiries, Davidson claims, AOL did not inform him of its internal hiring policy for non-voicephone positions or that he had not been considered for employment because he is deaf. However, "notice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue. . . . [o]n the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." See Hulsey, 43 F.3d at 558-559 (citations omitted). As we have recognized, "[a] declaration of discrimination need not be issued before the statute of limitations begins to run."Id. While AOL's hiring policy might be evidence of its alleged discriminatory motive at the time it refused to hire Davidson in 1997, it is the alleged discriminatory refusal to hire that Davidson seeks to redress. Thus, September 1997 is the date when Davidson's first discriminatory refusal to hire claim began to accrue.

Davidson argues that under this logic, every job applicant who is rejected should file an administrative claim to preserve his or her rights in the event that it is later discovered that the refusal to hire was based on discriminatory motives. This, Davidson argues, will foster "hostility, paranoia and countless meritless administrative claims." However, as we explained in Hulsey, it is not necessary for a claimant to know all the evidence upon which he will ultimately rely at trial in order to file a charge with the EEOC:

> We may presume that many facts will come to light after the date of an employee's termination, and indeed one purpose of a charge and a complaint is to initiate the process of uncovering them. It is sufficient that [plaintiff] was on notice at the moment of his alleged constructive termination "to inquire whether there was [a] discriminatory motive for the discharge."

Hulsey, 43 F.3d at 558 (quoting Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir.1990).

Finally, we note that Davidson appears to have confused the difference between the accrual of his 300-day period of limitations and the equitable tolling of that limitations period. See Amini v. Oberlin College, 259 F.3d 493, 499-500 (6th Cir. 2001) (discussing the two doctrines and the confusion they invite). The Morgan Court acknowledged that the 300-day period of limitations for filing a charge with the EEOC may be adjusted by equitable doctrines such as waiver, estoppel and equitable tolling. 536 U.S. at 113 (citation omitted). Davidson did not raise equitable tolling as an objection or response to AOL's motion for summary judgment, going so far as to specifically state at oral argument before the district court that he was not raising an equitable tolling defense as an alternative to his invocation of the continuing violation doctrine. We will not consider a new legal theory on appeal, even if it "falls under the same general category as an argument presented at trial." Jantzen v. Hawkins, 188 F.3d 1247, 1257 (10th Cir. 1999) (quoting Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc., 100 F.3d 792, 798 (10th Cir.), opinion amended on other grounds, 103

F.3d 80 (10th Cir. 1996)).

II.    *ADA Claim*

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to" a number of actions by an employer, including "hiring." 42 U.S.C.§ 12112(a).  To establish a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that he is disabled within the meaning of the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that he was discriminated against because of his disability." McKenzie v. Dovala, 242 F.3d 967, 969 (10th Cir. 2001) (quoting Aldrich v. Boeing Co., 146 F.3d 1265, 1269 (10th Cir. 1998) (internal quotation omitted)).

Defining and applying an appropriate framework for analyzing claims of discrimination has proven difficult, as evidenced by the parties' conflicting theories of discrimination.  We pause to examine the theories under which ADA claims should be analyzed.

"Discrimination" as used in the ADA encompasses three distinct types of discrimination.  First, it means treating "a qualified individual with a disability" differently because of the disability, that is, disparate treatment. Additionally, because the ADA defines discrimination in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise

-17-

qualified individual . . . ," 42 U.S.C. § 12112(b)(5)(A), a separate claim of discrimination can be stated under the ADA for failing to provide a reasonable accommodation. Finally, under a disparate impact theory, discrimination is defined as including the use of "qualification standards . . . or other selection criteria that screen out or tend to screen out an individual with a disability. . . ." 42 U.S.C. § 12112(b)(6). No matter what type of discrimination is alleged, however, a plaintiff must establish first that he was "a qualified individual with a disability."

This case involves a claim of disparate treatment discrimination in that Davidson contends that AOL intentionally discriminated against him by failing to consider him for employment on account of his disability. The burden shifting analysis established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) generally applies to ADA disparate treatment claims. See Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999). Under that analysis, a plaintiff carries the burden of raising a genuine issue of material fact on each element of his prima facie case. If plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. Id. If defendant articulates a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether the defendant's reason for the adverse employment action is pretextual. Id. at 1079-1080.

"If the employer admits that the disability played a prominent part in the decision, or the plaintiff has other direct evidence of discrimination based on disability, the burden-shifting framework may be unnecessary and inappropriate. Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 n. 3 (10th Cir. 1997) (citing White v. York Int'l Corp., 45 F.3d 357, 361 n. 6 (10th Cir. 1995)). Instead, an employer will defend its decision on the ground that the plaintiff is not otherwise qualified for the position, with or without reasonable accommodation. The McDonnell Douglas burden shifting approach is unnecessary because the issue of the employer's intent has been admitted and the plaintiff has direct evidence of discrimination on the basis of his disability. If the plaintiff in such a case is in fact statutorily disabled, the determinative issue in the case will not be the employer's intent, but whether the employee is "otherwise qualified," with or without reasonable accommodation, to perform the job, a factual dispute that is resolved through traditional methods of proof. Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1182 (6th Cir. 1996) (discussing White, 45 F.3d at 361 n. 6).

We now turn to the framework of the arguments on appeal. The parties disagree whether the McDonnell Douglas burden shifting analysis applies to this case. It is undisputed that Davidson is disabled. Davidson contends that he is qualified to perform the essential functions of the jobs he desires, the non-voicephone positions. AOL's explanation for its refusal to hire Davidson is that

he was unable to perform the jobs available for external hire, that is, the voicephone positions. Viewed properly, this reason is related to Davidson's disability. In other words, AOL's explanation for its action established that it relied on Davidson's disability when it refused to hire him. Accordingly, we believe the McDonnell Douglas burden shifting analysis is inappropriate to the facts of this case. Thus, the key to our decision is whether Davidson is a "qualified individual" as defined by the ADA.

A.   *Qualified Individual*

In granting summary judgment for AOL, the district court focused on the second element of the prima facie case, holding that Davidson was not a "qualified individual." The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). We have endorsed a two-part analysis to determine whether a person is qualified under the ADA. Aldrich v. Boeing Co., 146 F.3d at 1271. First, the court determines whether the individual can perform the essential functions of the job. Id. Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable him to perform those functions. Id. (citations omitted).

1.     *Essential Functions.*

Our first task is to determine, assuming the facts to be as Davidson has presented them, whether Davidson can perform the essential functions of "the employment position that [he] holds *or desires*." 42 U.S.C. § 12111(8) (emphasis added).  In determining that Davidson was not a qualified individual, the district court held that the job at issue was limited to positions "that were offered to and open for external hires. . . . [H]e has not shown that he is qualified for the jobs that were available." This analysis is in error.

The district court's interpretation of qualified individual reads out the critical phrase "or desires."  We do not read § 12111(8) so narrowly.  The ADA explicitly covers job applicants as well as employees.  See 42 U.S.C. § 12112(a) (prohibiting, inter alia, "discriminat[ion] . . . in regard to job application procedures" and "the hiring . . . of employees").  Davidson applied and asked to be considered for any existing non-voicephone job at AOL.  AOL admits that such positions were available, but that they are limited to internal hires.  The idea underlying AOL's position is that the company's decisions with respect to filling the non-voicephone positions cannot be characterized as hiring decisions, because the company placed only existing employees in those positions.  We recognize that "hiring" could be thought of as limited to the initial process through which a person joins the employer's workforce.  In our view, however, "hiring" under the ADA encompasses the general process of selecting a person to hold a given job,

regardless of whether applicants must already be working for the employer.[4]

Under the ADA, Davidson is a "qualified individual" as long as he can perform a job at AOL that he "desires." 42 U.S.C. § 12111(8); see McKenzie v. Dovala, 242 F.3d at 974 (ADA protection extends to a former employee with a disability seeking to be rehired who is qualified for a position she desires); Smith v. Midland Brake, Inc., 180 F.3d 1154, 1161 (10th Cir. 1999) (en banc) ("To read the ADA otherwise, would render the word 'desires' meaningless, and we must avoid such a construction." (citations omitted)).  Davidson applied and asked to be considered for any non-voicephone position at AOL; such non-voicephone positions were available, albeit internally, when he applied.  Thus, the non-voicephone positions are the proper jobs we must analyze to determine whether Davidson is a qualified individual.  See Seiberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1022-23 (7th Cir. 1997) (holding that an applicant is not a qualified individual unless he can perform the essential functions of the position for which he actually applied).

The term "essential function" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires."

---

[4]The common usage of the term "hiring" has encompassed filling positions from within or outside of a company.  See Prince George's County v. United States Dep't of Labor, 719 F.2d 726, 728 (4th Cir. 1983) (holding that the term "hire," as used in a federal anti-nepotism regulation, applied to the transfer of a long-time county employee from one position into a similar position in a different program).

29 C.F.R. § 1630.2(n)(1); Martin v. Kansas, 190 F. 3d 1120, 1130 (10th Cir. 1999). This term does not include marginal functions of the position. 29 C.F.R. § 1630.2(n)(1); White v.York Int'l Corp., 45 F.3d at 361. Determining whether a particular function is essential is a factual inquiry. See id. In making this determination, courts must give consideration to the employer's judgment as to what functions of a job are essential, including those functions contained in a written job description. See id.; see also 42 U.S.C. § 12111(8). However, such evidence is not conclusive; "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." Echazabal v. Chevron USA, Inc., 226 F.3d 1063, 1071 (9th Cir. 2000) (rev'd on other grounds, 536 U.S. 73, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002).

"The question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement." Tate v. Farmland Industries, Inc., 268 F.3d 989, 993 (10th Cir. 2001) (citing Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995). If the employer does require performance of those functions, "the inquiry will then center around whether removing the function would fundamentally alter the position." Milton, 53 F.3d at 1124. This inquiry is not intended to second guess the employer or to require him to lower company standards. Id.; see also

-23-

29 C.F.R. Pt. 1630, App. § 1630.2(n); H.Rep. No. 101-485(II), at 55 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 337 (The ADA "does not undermine an employer's ability to choose and maintain qualified workers.") Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it. Tate, 268 F.3d at 993; H.Rep. 101-485(II), at 56, reprinted in 1990 U.S.C.C.A.N. at 338 ("Under this legislation an employer may still devise physical and other job criteria and tests for a job as long as the criteria or tests are job-related and consistent with business necessity.")

In this case, the job functions at issue are those associated with the non-voicephone positions. AOL's hiring policy sets one requirement for the nonvoicephone positions that Davidson cannot meet. Voicephone experience is a prerequisite for placement in any non-voicephone position. AOL cites several factors to illustrate that it has a legitimate basis for requiring voicephone experience: productivity demands, knowledge and experience, employee incentive and cost effectiveness.

Viewing the facts in a light most favorable to Davidson, we conclude that he has alleged sufficient facts to establish a genuine issue of material fact of whether voicephone experience is an essential function of all of the non-voicephone positions that he desires the opportunity to fill, notwithstanding the hiring policy AOL has propounded. Notably, although AOL makes the broad

assertion that non-voicephone positions require AOL voicephone experience, it admits that voicephone personnel have been transferred to non-voicephone positions with as little as two or three weeks experience. Moreover, AOL has acknowledged that deaf persons can and have filled these positions successfully in the past, until the hiring policy was changed in 1997. AOL's claim that departure from its hiring policy would harm current employee morale is belied by the relatively rare possibility of a deaf person being hired directly into non-voicephone positions. Nor is it clear that it would be unreasonably inefficient for AOL to train deaf employees for non-voicephone positions. In the past, it certainly has trained deaf external applicants for non-voicephone positions.

The district court declined to consider AOL's proffered reasons justifying its hiring policy, holding that "absent evidence of unlawful discrimination or that a policy does not serve a legitimate business purpose, an employer's business judgment is not the province of the federal courts," citing Anderson v. Coors Brewing Co., 181 F.3d 1171, 1176 (10th Cir. 1999). AOL's requirement of voicephone experience for non-voicephone positions may or may not be justified as job-related or a business necessity, but that is a question for a jury to answer with all the available evidence before it. For the foregoing reasons, we hold that summary judgment in favor of AOL was improper as to the issue of whether Davidson is a "qualified individual."

2.    *Reasonable Accommodation.*

Davidson has maintained throughout the case that because he met the first prong of the "qualified individual" test, there is no need to consider the second prong of the test. In the alternative, however, Davidson asserts that a reasonable accommodation is for AOL to consider him for non-voicephone positions that were vacant when he applied, despite AOL's policy that such positions are not open to external hires. AOL argues that waiving the hiring policy in the case of persons with disabilities is not a reasonable accommodation because it would constitute a "reassignment," which it contends is not available to job applicants and would impose an "undue hardship" on AOL. The district court agreed with AOL, holding that an employer's duty to reassign an employee to a vacant position is limited to the situation in which there is a need to accommodate an existing, disabled employee, citing <u>Smith v. Midland Brake</u>, 180 F.3d at 1154. Given our conclusion that the proper jobs to consider in determining whether Davidson is a qualified individual are the non-voicephone positions that he desired, summary judgment was improper on this issue as well.

We do not decide whether reassignment is available to a job applicant because what Davidson is demanding in this case is *not* a reassignment, but rather, a restructuring of the non-essential requirements of the non-voicephone

-26-

positions that Davidson desires.[5] We note that should a jury decide that voicephone experience is an essential function, the inquiry ends there, because the reasonable accommodation requested by Davidson is to eliminate that essential function, which an employer is not required to do. Smith v. Blue Cross Blue Shield of Kansas, Inc., 102 F.3d 1075, 1076 (10th Cir. 1996), cert. denied, 522 U.S. 811, 118 S.Ct. 54, 139 L.Ed.2d 18 (1997) (citations omitted).

III.    *Conclusion*

We AFFIRM the district court order that plaintiff's 1997 refusal to hire claim is time-barred. The order of the district court granting summary judgment on plaintiff's ADA claim is REVERSED and REMANDED for proceedings consistent with this opinion.

---

[5]We also reject AOL's contention that its hiring policy is part of an established seniority system entitled to deference under US Airways, Inc. v. Barnett, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002), in the absence of any evidentiary support for this claim.