**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHELLE M. SORENSON,

Plaintiff - Appellant,

v.

CAMPBELL COUNTY SCHOOL
DISTRICT,

Defendant - Appellee.

No. 18-8012
(D.C. No. 2:14-CV-00229-ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **McKAY**, and **MORITZ**, Circuit Judges.

The Americans with Disabilities Act (the "ADA") prohibits employers from

discriminating against disabled employees or retaliating against an employee for engaging

in protected activity. 42 U.S.C. §§ 12112(a), 12203(a). Michelle M. Sorenson sued the

Campbell County School District (the "School District") for discriminating against her

because of her disability and then unlawfully retaliating against her. The district court

---

[*] This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate Procedure
32.1 and Tenth Circuit Rule 32.1.

granted summary judgment for the School District on both claims. Ms. Sorenson appeals from that judgment and moves to supplement the appellate record. The School District, in turn, asks that we affirm the district court's judgment and moves to strike Ms. Sorenson's supplemental appendix. Exercising jurisdiction under 28 U.S.C. § 1291, we **deny** Ms. Sorenson's motion to supplement the record, **grant** the School District's motion to strike, and **affirm** the district court's judgment.

## I

Ms. Sorenson worked for the School District for almost twenty years. Although she began as an attendance clerk, she worked her way up to a salaried position as a computer specialist. In that role, Ms. Sorenson created statistical reports and used software programs to create student class schedules.

In 2001, Ms. Sorenson was diagnosed with multiple sclerosis—an incurable and often debilitating disease of the brain and spinal cord, *see Multiple Sclerosis*, Mayo Clinic, https://mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269 (last visited Apr. 17, 2019). After sharing this diagnosis with the School District, Ms. Sorenson continued working as a computer specialist for the next seven years.

But by 2008, Ms. Sorenson's worsening condition prompted changes in her professional life. For instance, because she struggled to walk long distances, the School District offered to move her office to a more convenient location. She accepted this

accommodation. Ms. Sorenson's job title also changed in 2008 from computer specialist to guidance clerk. This new hourly role paid far less than the salaried computer-specialist position did.

According to the School District, Ms. Sorenson asked for this change. At her deposition, Ms. Sorenson admitted asking to change jobs and said that she gladly moved to a lower-paying but lower-stress position. On appeal, however, Ms. Sorenson describes the change as "a pretext" for discrimination. Aplt.'s Opening Br. at 11.

Two years after changing jobs, Ms. Sorenson moved to a part-time position as a guidance clerk. For the three years that she worked in this part-time position, Ms. Sorenson alleges that the School District sometimes did not pay her for all the time that she spent working from home.

According to Ms. Sorenson, she never did the work of a guidance clerk but instead kept working as a de facto computer specialist. Not so, the School District responds. It alleges that Ms. Sorenson stopped working as a computer specialist once she transferred to the guidance-clerk position. In fact, the School District points out that she could not have done that work because, after leaving her computer-specialist position, she lost access to the necessary computer programs.

What is not disputed is that Ms. Sorenson's condition worsened to the extent that she could no longer work. In early February 2013, Ms. Sorenson and the School District met to discuss her health and work schedule. On one School District employee's retelling

of the meeting, the School District offered to accommodate Ms. Sorenson's needs, but she declared that she could not and did not wish to keep working. Ms. Sorenson confirmed this account in her deposition; she admitted that the School District offered to let her keep working but that she declined this offer because she could no longer physically or mentally do the job. She tells a different story, however, on appeal. Now she says that the School District effectively barred her from returning to work by stripping her of access to all computer programs the Monday after the February 2013 meeting. Either way, the parties agree that Ms. Sorenson never returned to work after the meeting.

For the next few months, Ms. Sorenson exhausted her leave while applying for short-term and then long-term disability benefits. Her applications were successful, and she was awarded both kinds of benefits in 2013. An eligibility criterion for long-term disability is the inability to work.

Ms. Sorenson's tenure with the School District formally ended in June 2013. The circumstances of her departure are contested. The School District says that Ms. Sorenson willingly resigned. After all, she had repeatedly said that she could not, and would not, return to work. Ms. Sorenson confirmed the School District's version in her deposition. Despite that testimony, Ms. Sorenson now contends that the School District wrongfully fired her.

After filing a charge with the Equal Employment Opportunity Commission and getting a right-to-sue letter, Ms. Sorenson sued the School District in federal district

court. Her suit alleged that, among other things, the School District discriminated and retaliated against her in violation of the ADA. To support her discrimination claim, Ms. Sorenson posited that the School District discriminated against her because of her disability (multiple sclerosis) by (1) demoting her from computer specialist to guidance clerk in 2008, and then from full-time to part-time guidance clerk in 2010; (2) changing her job title (and pay) from computer specialist to guidance clerk, while still expecting her to do the work of a computer specialist; and (3) by wrongfully firing her in 2013. Ms. Sorenson also accused the School District of retaliating against her after she disclosed her disability and requested accommodations.

The district court entered summary judgment for the School District.[1] Although the court found that Ms. Sorenson was disabled under the ADA, it ruled that she could not show a genuine dispute of material fact to support her discrimination claim. And because the court found that she did not engage in any protected activity, it rejected her retaliation claim as well. Thus, the court granted the School District summary judgment on the discrimination and retaliation claims.

---

[1] Although Ms. Sorenson had counsel through the complaint and motion-to-dismiss stages, her counsel withdrew during the summary-judgment stage after he had not heard from her for several weeks. This withdrawal left Ms. Sorenson to respond pro se to the School District's motion for summary judgment. We liberally construe that response and any other pro se pleadings. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019). Though Ms. Sorenson initially appealed pro se, counsel has represented her during this appeal, drafting her briefs and motions. Thus, her appellate briefing does not benefit from such a liberal construction.

Ms. Sorenson now appeals from that order. She asks that we reverse the district court's order granting the School District summary judgment on her discrimination and retaliation claims. To support these arguments, Ms. Sorenson moves to supplement the record. The School District, in turn, moves to strike Ms. Sorenson's supplemental appendix.

## II

Ms. Sorenson's appeal presents us with two overarching questions. First, should we allow her to supplement the record? And second, did the district court err in granting the School District summary judgment on the discrimination and retaliation claims? Our answer to both questions is "no."

## A

Ms. Sorenson moved to supplement the record to include a medical report, a court report, and several emails. These materials amount to ten pages, none of which were in the record before the district court. And Ms. Sorenson has offered no explanation in her motion for why she failed to give this information to the district court. The School District opposed this motion.

This court reserved judgment on Ms. Sorenson's motion to add the ten pages that she identified in her motion to supplement. A few weeks later, we issued another order reminding Ms. Sorenson that, absent a new motion to supplement, her supplemental appendix may include only those ten pages.

6

Ms. Sorenson then filed an 845-page supplemental appendix. The School District moved to strike this appendix and again asked us to deny Ms. Sorenson's original motion to supplement.

In reviewing a summary-judgment order, we ordinarily may not "consider evidence not before the district court." *John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 506 (10th Cir. 1994); *see Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 862–63 (10th Cir. 2015) ("We undoubtedly have discretion to deny a motion to supplement the record on appeal when the materials sought to be added to the record were never before the district court."). Although "under some circumstances, we have an inherent equitable power to supplement the record on appeal," *United States v. Kennedy*, 225 F.3d 1187, 1192 (10th Cir. 2000), we conclude that no such circumstances are present here.

Ms. Sorenson could have presented the district court with the contents of the ten pages, which she has attached to her motion to supplement. But she did not. In a "Preamble" to her supplemental appendix—but not in her motion to supplement—Ms. Sorenson suggests that she did not provide these documents (as well as other documents in the supplemental appendix) to the district court because her counsel withdrew from the case just as the School District moved for summary judgment. Aplt.'s Suppl. App., Vol. I, at ii–iii. That her counsel withdrew from the case is unfortunate; that fact, however, did not relieve Ms. Sorenson from the ordinary burdens of litigation, including putting the necessary documents to defend against summary judgment into the record. *See Requena*,

7

893 F.3d at 1205 (noting that pro se litigants "must comply with the same rules of procedure as other litigants"). In any event, we would be disinclined to allow Ms. Sorenson to rely on this explanation as a justification for not presenting the documents to the district court because she did not offer that explanation when she filed her motion to supplement. *See* FED. R. APP. P. 27(a)(2)(A) ("A motion must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it."). Instead, that motion offers no explanation whatsoever for Ms. Sorenson's failure to present these documents (or, indeed, any of her supplemental documents) to the district court. For the foregoing reasons, we exercise our discretion to deny Ms. Sorenson's motion to supplement the record with the ten pages at issue in her motion but not presented to the district court.

As for Ms. Sorenson's 845-page supplemental appendix, we grant the School District's motion to strike that appendix. That she could have presented this information to the district court is reason enough to strike the supplemental appendix. *See United States v. Maden*, 64 F.3d 1505, 1510 n.3 (10th Cir. 1995) (granting motion to strike appendix because the party did not present the information to the district court). But, by filing a supplemental appendix that contravened this court's orders, Ms. Sorenson—or, more accurately, Ms. Sorenson's counsel—has obliterated any doubt as to the correctness of the conclusion to strike the appendix.

In summary, we deny Ms. Sorenson's motion to supplement and grant the School

8

District's motion to strike the supplemental appendix. We will neither consider nor cite any portion of these extra-record materials in resolving the merits of this case.[2]

**B**

Having defined the boundaries of the appellate record, we now must decide whether the district court erred in granting the School District summary judgment on Ms. Sorenson's discrimination and retaliation claims. We review de novo a district court's grant of summary judgment. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1180 (10th Cir. 2018). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although the nonmovant benefits from all reasonable inferences from the record, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" can stop a district court from entering summary judgment. *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of

---

[2]    "[I]n an abundance of caution," we have reviewed the contents of this supplemental material. *Cornhusker*, 786 F.3d at 864. Having done so, we note that, even if we considered the substance of either the ten pages at issue in Ms. Sorenson's motion to supplement or the 845-page supplemental appendix, we would still affirm the district court's order granting the School District summary judgment on Ms. Sorenson's discrimination and retaliation claims. *Cf. Holmes v. Utah Dep't of Workforce Servs.*, 483 F.3d 1057, 1068 (10th Cir. 2007) (noting that, even if the court considered the supplemental material, its holding would not change).

evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143–44 (10th Cir. 2013). Applying this standard, we hold that the district court did not err in granting the School District summary judgment on Ms. Sorenson's discrimination and retaliation claims.

## 1

The ADA prohibits employers from discriminating on the basis of disability. *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1047–48 (10th Cir. 2017). As relevant here, there are two types of ADA discrimination claims—disparate-treatment and failure-to-accommodate claims. A plaintiff makes a disparate-treatment claim when she alleges that the defendant intentionally treated her differently because of her disability. *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003). A failure-to-accommodate claim, by contrast, pertains to discrimination that stems from a "failure to provide reasonable accommodations for a disability." *Punt*, 862 F.3d at 1048. To distinguish between disparate-treatment and failure-to-accommodate claims, we look to "all of the circumstances," *id.* at 1050, with a focus on "the allegations in the plaintiff's complaint," *id.* at 1049.

Ms. Sorenson never specifies in her amended complaint—the operative one here—which type of discrimination claim she levies against the School District. Indeed, Ms. Sorenson arguably conflates the two kinds of claims, averring that the School District

10

"intentionally discriminated against [her] by failing to . . . reasonably accommodate her disability." Aplt.'s App., Vol. I, at 38 (Am. Compl., filed Nov. 17, 2014). The arguments of her opening brief appear to do likewise. *See* Aplt.'s Opening Br. at 27 (citing the standards for both disparate-treatment and failure-to-accommodate claims and arguing the "abuse and mistreatment" that Ms. Sorenson suffered at the hands of the School District did not amount to making a reasonable accommodation).

The district court clearly seemed to think that Ms. Sorenson was pursuing a failure-to-accommodate claim and found that she failed to demonstrate a genuine dispute of material fact regarding the denial of a reasonable accommodation. Insofar as Ms. Sorenson's appellate briefing may be read to object to that ruling, we need not pause long and can uphold in summary fashion the court's determination. That is because Ms. Sorenson fails to specify any accommodations that the School District unreasonably refused to grant to her. Indeed, the only accommodations that Ms. Sorenson does mention in her briefing are those that the School District *granted* her. *See, e.g.*, Aplt.'s Reply Br. at 1 (noting that the School District "offered [Ms. Sorenson] to have her place of work moved to a private office at the high school to accommodate her need for a less stressful and a more conducive work environment for her Computer System Analyst . . . duties"). Therefore, we summarily reject any challenge by Ms. Sorenson to the district court's resolution of her ostensible failure-to-accommodate claim.

It is less clear that, in entering summary judgment against Ms. Sorenson, the

11

district court perceived her as also putting forth a disparate-treatment theory. Ms. Sorenson's briefing on appeal tacitly suggests that the court did identify and rule on this theory of discrimination, as she cites in part disparate-treatment cases and contends that the School District subjected her to "abuse and mistreatment" by causing her to suffer the same three allegedly adverse actions that Ms. Sorenson put before the district court. *See* Aplt.'s Opening Br. at 27. In this regard, recall that Ms. Sorenson alleged that the School District discriminated against her because of her disability (multiple sclerosis) by (1) demoting her from computer specialist to guidance clerk in 2008, and then from full-time to part-time guidance clerk in 2010; (2) changing her job title (and pay) from computer specialist to guidance clerk while still expecting her to do the work of a computer specialist; and (3) wrongfully firing her in 2013.

Even accepting for purposes of resolving this appeal that Ms. Sorenson's interpretation of the scope of the district court's judgment is correct—i.e., that it encompassed a purported disparate-treatment claim—that fact does not avail Ms. Sorenson. That is because we conclude that the district court's judgment rests on a solid legal foundation.

For any of Ms. Sorenson's allegations of intentional discriminatory conduct to escape summary judgment, she must satisfy the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because Ms. Sorenson offers no direct evidence of discrimination. As relevant to the ADA, to make a prima facie showing of discrimination

12

under this test, a plaintiff must show that: (1) she is disabled under the ADA, (2) she is qualified—with or without accommodation—to perform the "essential functions of the job held or desired," and (3) she was "discriminated against because of [her] disability." *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218–19 (10th Cir. 2016) (quoting *Davidson*, 337 F.3d at 1188); *accord Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015).

The third part of the prima facie burden "focuses on whether the circumstances surrounding the adverse employment action 'give rise to an inference that the [action] was based on [the plaintiff's] disability.'" *Lincoln*, 900 F.3d at 1192–93 (alterations in original) (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014)). In other words, without "some affirmative evidence that disability *was a determining factor* in the employer's decision," a disparate-treatment claim fails. *Id.* at 1193 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). We conclude that Ms. Sorenson has failed to identify such affirmative evidence. As a result, she cannot demonstrate a genuine dispute of material fact regarding this third part. Therefore, we will not disturb the district court's judgment regarding Ms. Sorenson's purported disparate-treatment claim.

Specifically, Ms. Sorenson's briefing and the record lack even a hint that the School District took any of the three adverse actions that she identifies *because of* her disability—that is, there is no evidence that her disability was a determining factor in the

School District's actions. For instance, even assuming *arguendo* that the School District fired Ms. Sorenson, she never claims—and there is no evidence to indicate—that it did so because of her disability, as opposed to because she told the School District that she could not and would not work anymore. Similarly, even if Ms. Sorenson did the work of a computer specialist at a guidance clerk's pay, the record cannot support an inference that her disability had anything to do with this arrangement. At most, she posits that the School District took "advantage of the progression of her [multiple sclerosis]" by demoting her without changing her duties. Aplt.'s App., Vol. I, at 32. But Ms. Sorenson lacks any evidence to back up this conclusory statement. And, fatally for her cause, she does not even try to support the statement in her appellate briefing.

As for the 2008 job change and 2010 move to part-time work, she does not allege that the School District took these ostensibly adverse actions against her because of her disability. To the contrary, Ms. Sorenson herself admitted that, because of her deteriorating health, she wanted the job change to guidance clerk because it promised "less stress" and it gave her an opportunity to avoid feeling like "the weakest link." *Id.* at 96 (Excerpts of Sorenson Dep., dated Dec. 8, 2015). And, regarding her move to part-time status, Ms. Sorenson acknowledges that her husband had first raised the idea with the School District and that she was free to decline the move but agreed to it because she "knew" that her "health needed" her "to do it." *Id.* at 92.

In sum, even if the School District did what Ms. Sorenson alleges it did, she

14

presents no "affirmative evidence that disability *was a determining factor*" in the School District's actions. *Lincoln*, 900 F.3d at 1193 (quoting *Morgan*, 108 F.3d at 1323). Thus, she cannot make a prima facie showing of discrimination, and the district court correctly entered summary judgment against Ms. Sorenson on her purported disparate-treatment claim.

**2**

The district court was also right to enter summary judgment for the School District on Ms. Sorenson's retaliation claim. The ADA prohibits employers from retaliating against employees for engaging in a protected activity. *See* 42 U.S.C. § 12203(a). To prevail on an ADA retaliation claim, a plaintiff must make a prima facie showing of retaliation. *See Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186–87 (10th Cir. 2016). This prima facie showing has three parts: the plaintiff must show that (1) she "engaged in a protected activity"; (2) she "was 'subjected to [an] adverse employment action'" after or during "'the protected activity'; and (3) there was 'a causal connection between the protected activity and the adverse employment action.'" *Id.* (alteration in original) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)).

Ms. Sorenson cannot make this prima facie showing of retaliation. For starters, it is unclear what "protected activity" Ms. Sorenson claims to have engaged in. In the section of her amended complaint describing her retaliation claim, Ms. Sorenson alleged that the School District "intentionally discriminated against [her] after she notified them

15

of her disability and requested accommodation." Aplt.'s App., Vol. I, at 38. Yet, she failed in her amended complaint to further specify the nature of the protected activity, including what requested accommodations prompted the retaliation; doing so might have (among other things) provided at least an arguable foundation for the court to reasonably infer a causal connection between the alleged protected activity and the adverse employment action. Standing alone, these deficiencies grievously (if not fatally) undercut Ms. Sorenson's efforts to survive summary judgment on her retaliation claim. Not surprisingly, after surveying the record, the district court found that Ms. "Sorenson did not engage in protected [activity]." Aplt.'s App., Vol. II, at 46 (Order Granting Def.'s Mot., filed Jan. 24, 2018). But, even if there were substance to the retaliation theory that Ms. Sorenson advanced before the district court, Ms. Sorenson could not avail herself of it here because she effectively abandoned this theory in her opening brief by not making arguments pertaining to it. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

Instead, in her appellate briefing, Ms. Sorenson posits that the School District retaliated against her "when she began filing for long term disability" benefits. Aplt.'s Opening Br. at 28. But Ms. Sorenson did not make this argument before the district court and therefore she forfeited it, and, because she does not argue for plain-error review before us, she has effectively waived it. *See, e.g.*, *Havens v. Colo. Dep't of Corr.*, 897

16

F.3d 1250, 1253, 1259 (10th Cir. 2018).

But even assuming that we consider Ms. Sorenson's late-blooming allegation of protected activity, she still cannot show the requisite "causal connection between the protected activity and the adverse employment action." *Foster*, 830 F.3d at 1187 (quoting *Anderson*, 181 F.3d at 1178). The "adverse employment action" that Ms. Sorenson complains of on appeal seems to be (1) that the School District "locked her out of all of her computer access" after the February 2013 meeting and (2) then fired her in June. Aplt.'s Opening Br. at 28–29. Insofar as these events occurred at all, the record belies any inference that they were connected to Ms. Sorenson's pursuit of long-term disability benefits. For instance, Ms. Sorenson admitted that the School District did not tell her not to come back to work after the February meeting, and there is no evidence that they locked her out of all computer access after this meeting. Furthermore, Ms. Sorenson's own self-interest would have led her not to come back to work after filing for long-term disability because a condition precedent for applying for such benefits is an inability to work. And there is no evidence giving rise to an inference that the School District fired her for filing for such benefits.

Simply put, for purposes of her retaliation claim, Ms. Sorenson cannot link the School District's supposed adverse actions to her filing for disability benefits. The district court therefore properly granted the School District's motion for summary judgment on this claim.

**III**

For the foregoing reasons, we **DENY** Ms. Sorenson's motion to supplement the record, **GRANT** the School District's motion to strike the supplemental appendix, and **AFFIRM** the district court's order entering summary judgment for the School District.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge