George A. JEFFREY, Plaintiff

v.

John ASHCROFT, U.S. Attorney General Defendant

No. 3:CV–00–1442.

United States District Court, M.D. Pennsylvania.

Sept. 26, 2003.

Kimberly D. Borland, Borland & Borland, Wilkes–Barre, PA, for Plaintiff.

Kate L. Mershimer, U.S. Attorneys Office, Harrisburg, PA, for Defendant.

## *MEMORANDUM*

VANASKIE, Chief Judge.

George A. Jeffrey has brought this action under the Rehabilitation Act of 1973, 29 U.S.C. § 791, claiming disability discrimination in connection with the decision of the Federal Bureau of Prisons ("BOP") to terminate his probationary employment as a Chaplain. The BOP discharged Jeffrey after he failed a "Physical Abilities Test." Defendant has moved for summary judgment. Because there are genuine issues of fact material to the questions of

whether plaintiff's chronic obstructive pulmonary disease renders him "disabled" within the intendment of the Rehabilitation Act, and whether the PAT appropriately assesses job-related requirements for the position of prison Chaplain, the motion for summary judgment will be denied.

## I. BACKGROUND

Plaintiff George A. Jeffrey is a Roman Catholic priest with a history of serving in prison ministry. From 1991 through 1995, Father Jeffrey worked as a Chaplain for the Pennsylvania Department of Corrections at the State Correctional Institution at Dallas. (Jeffrey Dep. at 49–52.) He left that position when the Bishop of the Diocese of Scranton assigned him to other pastoral duties. (*Id.* at 50.) The Bishop subsequently appointed Father Jeffrey to apply for a Chaplain position with the BOP. (*Id.* at 49–50.)

On April 22, 1998, the BOP hired Father Jeffrey as a Chaplain for the McKean Federal Correctional Institution in Bradford, Pennsylvania ("FCI McKean") for a one-year probationary period. (Defendant's Statement of Material Undisputed Facts ("DSMUF"), Dkt. Entry 21, ¶ 3.)[1] In addition to being subject to a satisfactory security investigation and completion of a one-year probationary period, Father Jeffrey's retention by the BOP was "CONTINGENT UPON THE SUCCESSFUL COMPLETION OF INTRODUCTION TO CORRECTIONAL TECHNIQUES AT GLYNCO, GEORGIA." (Record in Support of Defendant's Motion for Summary Judgment ("R."), Vol. I, Dkt. Entry 24, at 10.) One aspect of the Glynco, Georgia program is the PAT, consisting of five timed tests intended to measure the physical abilities required for the performance of correctional work. (DSMUF, ¶ 5.)

The PAT was developed by industrial psychologists based upon a review of physical tasks required for a variety of job activities expected of correctional workers. (DSMUF, ¶¶ 16–18.) The PAT is intended to measure dynamic strength, gross body equilibrium and coordination, stamina, and explosive strength. (*Id.* ¶ 18.) The components of the PAT are a(1) dummy drag, requiring an individual to drag a 75–pound dummy over a distance of at least 694 feet within three minutes, intended to replicate an emergency scenario in which a victim is dragged to safety; (2) a ladder climb during which a person is to climb an eight foot, ten inch ladder and retrieve an item of contraband, intended to test the ability to search for contraband concealed in high places using the assistance of a ladder; (3) an obstacle course, requiring a person to open locked doors, re-lock the doors, and proceed over, under and around tables, desks, etc., within 58 seconds, intended to replicate an emergency situation within an institution; (4) a quarter mile run and handcuffing of an individual within two minutes and 35 seconds, measuring stamina; and (5) a stair climb, in which the participant wears a twenty pound weight belt and ascends and descends two flights of stairs three times, with the participant completing the test within 45 seconds. (*Id.*, ¶ 19.)

Satisfactory completion of the PAT is determined on the basis of a composite score. (*Id.*, ¶ 20.) Thus, if a participant does not meet the expected time for one component of the PAT, he or she may be able to compensate for that low score by scoring above average on another component. (*Id.*)

Prior to being offered employment with the BOP, Father Jeffrey underwent a

---

1. Citation to the Defendant's Statement of Material Undisputed Facts, submitted in accordance with Local Rule of Court 56.1, signifies that the factual assertion in question has been admitted by the plaintiff.

medical examination. (R. 71–78.) The examiner's notations indicate that the 58–year old Father Jeffrey had a history of hypertension controlled with Inderal, as well as chronic obstructive pulmonary disease ("COPD"), controlled with Atrovent and Azmacort. (R. 74.) The examiner recommended that Father Jeffrey be hired. (R. 75.) Prior to going to Glynco, Georgia, Father Jeffrey was medically cleared to undertake the PAT. (R. 80.) The notes of the Physician's Assistant that cleared Father Jeffrey for the PAT indicated that he had a history of emphysema, but that he ran four miles every day. (Id.)[2]

Prior to going to Glynco, Father Jeffrey discussed the PAT with Chaplain Roberts, the supervisory Chaplain at FCI McKean. (Jeffrey Dep. at 29–30, 72–73.) Father Jeffrey told Chaplain Roberts about his emphysema and breathing difficulties. (Id. at 73.) Chaplain Roberts informed Father Jeffrey that he should be able to perform the tests, (id. at 73), but Father Jeffrey was not aware that the tests had time limits. (Id. at 28–29.)

Father Jeffrey went to Glynco, Georgia in July of 1998. He did not realize that there were time limits on the various components of the PAT until after the testing had begun. (Jeffrey Dep. at 29–31, 33–34.) Father Jeffrey was given two opportunities to take the PAT. He did not complete all components of the PAT on the first try; on the second attempt, he failed to meet the time limits in four of the five tests. (DSMUF, ¶¶ 45–46.) Father Jeffrey was terminated by the FCI–McKean Warden due to his failure to pass the PAT. (Id., ¶ 48.)

Father Jeffrey attributes his inability to successfully complete the PAT to his impaired breathing capacity. (Id., ¶ 52.) He

has a combination of asthma and COPD. (September 5, 2001 Report of William B. Weiss, M.D., included in the record submitted in support of Plaintiff's Counter–Statement of Material Undisputed Facts ("SR.") at 35–36.) A comprehensive cardiopulmonary stress test revealed a reduction in exercise capacity on the basis of a respiratory limitation. (Id.) Dr. Weiss reports that Father Jeffrey "has been treated optimally for his COPD plus asthma, with a combination of an inhaled corticosteroid and an inhaled bronchodilator," and that "the exercise limitation would not be amenable to further pharmacologic manipulation." (Id. at 35–36.)

Father Jeffrey becomes breathless after running a few steps or carrying as little as ten pounds up a few steps. (Jeffrey Dep. at 7–10, 19–20.) When he loses his breathing capacity, he must rest for up to 30 minutes before being able to resume normal activity. (Id. at 11.) While he exercises on a treadmill in accordance with his doctor's advice, he starts out at a very slow pace of 2.5 miles per hour, and slowly progresses to a maximum rate of 4.0 miles per hour. (Id. at 12.) A more rapid rate or more strenuous activity leaves him breathless. (Id. at 11.)

After Father Jeffrey was fired, the BOP waived the PAT requirement for another Chaplain applicant. (R. 194–96.) In addition, BOP Chaplains hired prior to January 1, 1997 have not been required to complete the PAT, (defendant's Answers to Interrogatories, R. 173), and persons retained by the BOP on a contract basis to provide religious services are not required to pass the PAT. (Roberts Dep. at 36.)

Father Jeffrey contends that the PAT does not measure the physical ability to perform functions essential to the position

---

**2.** Father Jeffrey claims that the notation that he ran four miles every day was in error. Father Jeffrey explained that he exercises by walking slowly on a treadmill. (R. 26.)

of prison Chaplain. The BOP insists that *all* employees, including Chaplains, must be able to respond to emergencies and prison disturbances, and the PAT appropriately measures ability to respond to such situations.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. Of Educ.,* 25 F.3d 194, 197 (3d Cir.1994) (internal quotation marks omitted.) "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988); *Cont'l Ins. Co. v. Bodie,* 682 F.2d 436 (3d Cir.1982).

### B. The Analytical Framework for Father Jeffrey's Disability Discrimination Claim

The Rehabilitation Act of 1973 prohibits federal agencies from discriminating against individuals with disabilities in employment decisions. *See Shiring v. Runyon,* 90 F.3d 827, 830–31 (3d Cir.1996). The standards applicable to a Rehabilitation Act employment discrimination claim are those applied under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, *et seq. See* 29 U.S.C. § 791(g). Consequently, the definitions and standards used in assessing claims under the ADA will be used to assess the parties' positions in this case. *McDonald v. Pa. Dep't of Pub. Welfare,* 62 F.3d 92, 95 (3d Cir.1995). ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.")

Under the ADA, the term "discriminate" is explicitly defined to include:

using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

42 U.S.C. § 12112(b)(6).

Plaintiff bases his claim on the assertion that the PAT is neither job-related for the position of Chaplain nor consistent with business necessity. He thus argues that the BOP, in relying upon the PAT, discriminated against him on the basis of his disability. In addressing this claim, both parties have struggled to present their arguments within the analytical framework for "disparate treatment" or

"disparate impact" cases. Neither paradigm, however, is pertinent here. *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir.2003).

■ It is undisputed that the BOP relied upon Father Jeffrey's inability to successfully complete the PAT in terminating his employment. Father Jeffrey attributes his inability to complete the PAT to his COPD and resulting breathing difficulties. It is thus evident that Father Jeffrey's claimed disability played a prominent part in the BOP decision to terminate Father Jeffrey's employment. Where, as here, it is evident that the employer relied upon a disability in making an adverse employment decision, courts have held that an employee may establish a *prima facie* case of employment discrimination by showing that he or she:

> (1) has a disability, and (2) is 'otherwise qualified' for the position despite the disability either '(a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation.' If the employee challenges a purported job criterion as not essential and seeks its elimination, the burden then shifts to the employer

to establish that the 'challenged job criterion is essential, and therefore a business necessity,' or that its elimination 'will impose an undue hardship upon the employer.'

*Hamlin v. Charter Township of Flint,* 165 F.3d 426, 429 (6th Cir.1999) (*quoting Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996)). *Accord Davidson,* 337 F.3d at 1189–90.[3]

Viewed in the context of this version of a *prima facie* case, the key issues presented for resolution on defendant's summary judgment motion are whether, as a matter of law: (1) Father Jeffrey does not suffer from a "disability" as that term is defined under the Rehabilitation Act; and (2) the PAT is essential in assessing fitness for employment as a BOP Chaplain.

### C. *Father Jeffrey's "Disability"*

■ The Rehabilitation Act protects a person who has a physical or mental impairment that substantially limits one or more major life activities. *See* 29 U.S.C. § 705(9)(B); 45 C.F.R. § 84.3(j)(1). There are thus three components to a determination of whether a person is covered by the anti-discrimination in employment provi-

---

**3.** Research has not disclosed any Third Circuit precedent addressing the appropriate analytical framework where it is clear that the employer has relied upon a physical or mental impairment in making an adverse employment decision. The Supreme Court, however, has cautioned that the concept of a *prima facie* case of employment discrimination was not intended to be "rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). And our Court of Appeals has recognized that "a *prima facie* case cannot be established on a one-size-fits-all basis." *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 411 (3d Cir.1999). The burden shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for disparate treatment cases does not make sense where the employ-

er's reliance upon the employee's physical or mental impairment is obvious. As one court has observed, "[i]f the employer admits that the disability played a prominent part in the decision, or the plaintiff has other direct evidence of discrimination based on disability, the burden-shifting framework may be unnecessary and inappropriate." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 n. 3 (10th Cir. 1997). Likewise, a "disparate impact" analysis, involving statistical evidence of the discriminatory impact of an otherwise facially neutral employment criterion, is not applicable where, as here, the criterion is not facially neutral insofar as disabilities are concerned. I am thus persuaded to employ the analytical framework established by the Sixth Circuit in *Monette,* and applied by the Tenth Circuit in *Davidson.*

sions of the Rehabilitation Act: (1) the existence of a mental or physical impairment, (2) implicating a "major life activity", (3) in a "substantially" limiting way. *See Toyota Motor Mfg. Ky. Inc. v. Williams*, 534 U.S. 184, 194–96, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir.1994).

The term "physical impairment" encompasses a physiological disorder or condition affecting the respiratory system. *See Williams*, 534 U.S. at 195, 122 S.Ct. 681 (citing 45 C.F.R. § 84.3(j)(2)(ii) (2001)); *Heilweil*, 32 F.3d at 722; 29 C.F.R. § 1630.2(h)(1). In this case, there is no dispute that COPD constitutes a "physical impairment."

The term "major life activity" has been defined to include "breathing." 45 C.F.R. § 84.3(j)(2)(ii); 29 C.F.R. § 1630.2(*l*). There is no question in this case that COPD implicates the major life activity of breathing.

What is at issue on the summary judgment motion is whether the COPD "substantially limits" Father Jeffrey's breathing. Observing that the word "substantially" is defined as "considerable" or "to a large degree," the Supreme Court has ruled that "impairments that interfere in only a minor way with" a major life activity do not fall within the coverage of disability discrimination laws. *Williams*, 534 U.S. at 185, 122 S.Ct. 681. Under the regulations implementing the ADA, the term "substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Whether a particular impairment substantially limits a major life activity requires an individualized assessment on a case-by-case basis. *Williams*, 534 U.S. at 199, 122 S.Ct. 681; *Hendler v. Intelecom USA, Inc.*, 963 F.Supp. 200, 207 (E.D.N.Y.1997).

Observing that Father Jeffrey is able to discharge his pastoral duties and "is able to walk as a means of exercise, to work, to drive, to take care of himself, and to otherwise perform the functions required for daily living," (Br. in Supp. of S.J. Mot., Dkt. Entry 31, at 21), the BOP asserts that, as a matter of law, Father Jeffrey is not substantially limited in the major life activity of breathing. Father Jeffrey, on the other hand, contends that evidence of severe breathing difficulties when engaging in tasks such as carrying approximately ten pounds up a few steps, precludes summary adjudication of whether the COPD substantially limits his breathing. Father Jeffrey asserts that the evidence shows that he "is unable to climb steps, run, swim the width of a swimming pool, lift more than ten pounds, and generally engage in exertional activities." (Br. in Opp. to S.J. Mot., Dkt. Entry 32, at 12.) Father Jeffrey has also submitted medical evidence indicating that exertional limitations cannot be ameliorated pharmacologically. (S.R. at 35.)

Faced with similar facts, courts have ruled that a determination of whether a person is substantially limited in the major life activity of breathing is not amenable to resolution on a summary judgment motion. *See, e.g. Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 725–26 (6th Cir. 2000); *Horvath v. Savage Mfg., Inc.*, 18 F.Supp.2d 1296, 1301–03 (D.Utah 1998). In *Geuss v. Pfizer, Inc.*, 971 F.Supp. 164, 169–70 (E.D.Pa.1996), the plaintiff's asthma did not preclude him from walking to and from work. Asthma attacks, however, were triggered by "minor instances of physical exertion, such as running approximately 100 feet ...." *Id.* at 169. The

court ruled that, although the issue was a close one, the evidence was sufficient to sustain a jury determination that the plaintiff's "ability to breathe [was] significantly restricted in condition, manner, and duration in comparison to the average person in the population," and thus could be regarded as substantially limiting his ability to breathe. *Id.* at 170. Similarly, in *Bond v. Sheahan*, 152 F.Supp.2d 1055, 1065–66 (N.D.Ill.2001), evidence that the plaintiff's asthma precluded her from participating in many activities that she had previously enjoyed, such as dancing, jumping rope, and playing volleyball, was sufficient to preclude summary judgement in the face of evidence that her asthma was "mild persistent." *Id.* at 1065. In *Hendler*, 963 F.Supp. at 207, the court found that long-term asthma that produced periods of wheezing, shortness of breath, coughing, and increased susceptibility to respiratory infections could be regarded as substantially limiting the major life activity of breathing so that summary judgment on the issue was not warranted.

In this case, although the evidence is not overwhelming, Father Jeffrey has shown that his COPD produces serious breathing difficulties upon the slightest exertion. He has further shown that the impairment is permanent and not improved by medication. Although he is able to walk on a treadmill for up to sixty minutes, he must do so at a very slow pace. A rational jury, confronted with this evidence, could reasonably conclude that Father Jeffrey's COPD has a considerable impact on his ability to breathe and that he is significantly restricted as to the major life activity of breathing as compared to the average

person in the general population. Accordingly, the defendant is not entitled to summary judgment on the question of whether Father Jeffrey has a "disability" as that term is applied under the Rehabilitation Act.[4]

### D. The PAT as Measuring Ability to Perform "Essential Functions" of the Position of Chaplain

The BOP asserts that, even if summary judgment on the issue of whether Father Jeffrey is disabled is not warranted, judgment must be entered in its favor because his failure to pass the PAT precludes a determination that he is a "qualified" individual with a disability. A "qualified individual with a disability" refers to a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In this case, the BOP argues that Father Jeffrey is unable to perform the essential functions of the position he desired because he failed the PAT, designed to measure the ability to perform the anticipated tasks of a correctional worker. Father Jeffrey has challenged the BOP assertion that performing correctional worker tasks measured by the PAT is essential to his functioning as a Chaplain. The BOP bears the burden of showing that the "challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship . . . ." *Monette*, 90 F.3d at 1186.

Defendant recognizes that "[t]he term 'essential functions' means the fundamen-

---

**4.** Cases in which summary judgment has been granted where the major life activity of breathing was at issue generally concerned environmentally-induced asthma. In those cases, the plaintiffs had breathing difficulties in certain work environments, but were not otherwise restricted when outside such work-

ing environments. *See, e.g., Muller v. Costello*, 187 F.3d 298, 314 (2d Cir.1999); *Heilweil*, 32 F.3d at 723–24. In this case, Father Jeffrey's breathing difficulties are induced upon physical exertion, and not limited to a particular environment.

tal job duties of the position, not marginal functions." (Br. in Supp. of S.J. Mot., Dkt. Entry 31, at 22.) Regulations implementing the ADA identify reasons why a job function may be considered essential. 29 C.F.R. § 1630.2(n)(2). The regulations also list evidence pertinent to a determination of whether a particular job function is essential. 29 C.F.R. § 1630.2(n)(3). The regulatory criteria and listing of pertinent information will be addressed in the context of the evidence in this case.

First, a function may be regarded as essential "because the reason the position exists is to perform that function." 29 CFR § 1630.2(n)(2)(I). The PAT measures the ability to perform correctional work. It cannot be said that the Chaplain positions exists to perform the function of responding to disturbances and maintaining discipline at a penal institution.

▮ The BOP insists that it has the prerogative to establish a "correctional worker first" policy, meaning that every BOP employee must be able to perform correctional work, including responding to disturbances and emergencies. An employer's judgment as to the essential functions of a particular job is indeed pertinent evidence. *See* 29 CFR § 1630.2(n)(3)(I). The employer's judgment, however, is not conclusive. *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 283 (3d Cir.2001). In this regard, "an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." *Davidson*, 337 F.3d at 1191. Thus, the BOP "correctional worker first" policy does not end the inquiry.

The BOP points to evidence that Chaplains, on occasion, have responded to prison disturbances and other emergency situations. A particular function may be regarded as essential where there is a "limited number of employees available

among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2)(ii). In this case, the evidence does not permit a conclusion that the number of employees available to respond to a prison disturbance is so small that a prison Chaplain must be expected to be a first responder. Moreover, Father Jeffrey has pointed to evidence that the occasions on which a Chaplain has responded to a prison disturbance are relatively small, and a Chaplain has not been required to actually participate in quelling a disturbance. Thus, the fact that Chaplains have responded to prison emergencies does not mandate a conclusion that this function is essential to the position of prison Chaplain.

A function may be regarded as essential where it is shown that the "incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2)(iii). There is no contention in this case that Father Jeffrey or any other Chaplain was hired for his expertise or ability to serve as a correctional worker first.

The BOP relies upon the fact that the job description for the FCI McKean Chaplain position included responding to emergencies and providing security. (R. 92.) Evidence of whether a particular function is essential includes pertinent written job descriptions. 29 C.F.R. § 1630.2(n)(3)(ii). Father Jeffrey points out that a six page overview of BOP Chaplaincy services sent in October of 1998 did not make any mention of Chaplains providing security or responding to emergencies, other than to state that "applicants will complete a battery of tests to demonstrate the physical stamina necessary to maintain a safe and secure correctional environment." (SR 42.) Thus, the fact that the written job description for the Chaplain position at FCI McKean included responding to emer-

gencies does not compel the conclusion that such a function is essential to the job.

Another pertinent factor in the analysis is the amount of time devoted to that responsibility. 29 C.F.R. § 1630.2(n)(3)(iii). Father Jeffrey has presented evidence that, during the entire year 2000, Chaplain Roberts responded only to five emergency signals at FCI McKean.

Also militating against a conclusion that responding to emergencies is an essential job function is the fact that Chaplains hired before January 1, 1997 are not required to undergo the PAT. Defendant has not proffered any evidence that any incumbent Chaplain has been required to undergo testing to assure his or her ability to respond to prison disturbances.

The BOP argues that the ability to respond to emergency situations must be regarded as essential for all BOP employees, including Chaplains, because of the grave consequences of an inability to do so. The environment within an institution can, at times, be explosive. The BOP, however, has not shown that there is a substantial risk of harm if a Chaplain is unable to respond to a prison disturbance or other emergency. In this regard, the evidence shows that the BOP often retains ministers on a contract basis to provide chaplaincy services, and those independent contractors are not expected to meet the requirements of the PAT or to respond to emergency situations. An individual who, because of his or her disability, poses a "significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation," 29 C.F.R. § 1630.2(r), is not entitled to invoke the protections of the anti-discrimination legislation. The evidence in this case does not permit a conclusion that retention of a Chaplain who fails the PAT creates a high probability of substantial harm. Thus,

this factor does not compel entry of judgment in favor of the BOP. *See Hamlin*, 165 F.3d at 431–32 (that Assistant Fire Chief was unable to perform the rigorous activities of a fire fighter did not warrant judgment in favor of the employer where there was no evidence of a high probability of potential harm because of the plaintiff's physical limitations).

Another pertinent factor is the treatment of other persons in the same position. In this regard, there is evidence that the BOP waived the PAT requirement for another applicant for a Chaplain's position in a different institution. Defendant's argument that the waiver is irrelevant because the other applicant did not take the PAT, whereas Father Jeffrey failed the PAT, is not persuasive. The significance of the evidence is that the BOP was willing to hire a Chaplain without subjecting that person to the testing regimen that it maintains measures ability to perform essential functions of the position. This fact weighs against a conclusion that satisfactory completion of the PAT is an essential criterion for the position of Chaplain.

"Determining whether a particular function is essential is a factual inquiry." *Davidson*, 337 F.3d at 1191. *Accord Skerski* 257 F.3d at 279. Father Jeffrey has tendered sufficient evidence to show that the issue of whether satisfactory completion of the PAT is an essential criterion of the position of BOP Chaplain cannot be resolved as a matter of law. Indeed, this intensely factual inquiry must be left to a jury.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion for Summary Judgment (Dkt. Entry 20) will be denied. An appropriate Order follows.

*ORDER*

**NOW THIS 26th DAY OF SEPTEM-BER, 2003,** for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Dkt. Entry 20) is **DENIED.**

2. A telephonic scheduling conference will be conducted on **Thursday, October 23, 2003 at 2:00 p.m.** Counsel for plaintiff is responsible for arranging the call and all counsel should be ready to proceed before the undersigned is contacted.