**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GABRIELLE VALDEZ, Personal
Representative of the Estate of Doyle
"Rocky" Brown,

      Plaintiff – Appellant,

v.

BRENT MCGILL and MUELLER
SUPPLY COMPANY, INC.,

      Defendants – Appellees.

No. 11-2051
(D.C. No. 1:08-CV-00453-JCH-RLP)
(D. N.M.)

ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Circuit Judge, **McKAY**, and **O'BRIEN**, Circuit Judges.

Gabrielle Valdez, acting as the personal representative of the estate of Doyle

"Rocky" Brown, appeals from the district court's summary judgment for appellees Brent

McGill and Mueller Supply Company on claims related to Brown's discharge. She

contends the district court erred because there were genuine issues of material fact which

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

preclude summary judgment on both her: (1) Americans with Disabilities Act (ADA) and New Mexico Human Rights Act (NMHRA) claim; and (2) Family and Medical Leave Act (FMLA) and breach of contract claim. We affirm.

## BACKGROUND AND PROCEDURAL HISTORY

Brown was a warehouse supervisor for Mueller Supply Company, which manufactures metal building products. His duties included supervision of Mueller's warehouse, including all shipping and receiving. Brent McGill was Brown's supervisor.[1]

In April 2005, Brown advised McGill he had cancer and would need surgery. Even though Mueller was not subject to FMLA's requirements,[2] Mueller provided him with FMLA paperwork. He completed the paperwork and attached a physician's certification for the need for medical leave. In April 2005, Mueller approved his request for FMLA leave for his surgery and informed him he had a "right under FMLA for up to 12 weeks of unpaid leave in a 12-month period." (Aplt. App. Vol. 2 at 456.) Brown returned to work following his surgery in May 2005.

In January 2006, Mueller approved Brown for intermittent FMLA medical leave to accommodate his recurrent health-related absences. On January 24, 2007, he presented a physician's note indicating he was being treated for colon cancer, bronchitis, and fatigue,

---

[1] For simplicity, we refer to appellees collectively as Mueller except where the distinction is pertinent.

[2] Mueller employed too few people at Brown's work site to trigger FMLA requirements; nevertheless it had a policy of providing FMLA leave to all employees, even those who would not ordinarily be eligible for FMLA leave because they worked at locations with fewer than 50 employees within 75 miles. In 2007, Mueller discontinued this practice "due to growth and staffing requirements." (Aplt. App. 458.)

and would not be able to return to work until February 8, 2007. On February 7, 2007, Mueller sent him a letter explaining he had exhausted his twelve weeks of FMLA leave. On the same day, he obtained another physician's note indicating he would need three additional weeks of leave and would not be able to return to work until March 1, 2007. The next day, February 8, 2007, Mueller terminated him by telephone citing poor work performance and excessive absences. As the district court explained, Brown "offered to come to work 'against doctor's orders,'" but Mueller refused. (Aplt. App. Vol. 2 at 459.)

Brown filed a complaint in the United States District Court for the District of New Mexico. He sought damages for his termination under the ADA, FMLA,[3] and NMHRA. The district court entered summary judgment in favor of Mueller. Brown responded with a "Motion to Alter or Amend the Court's Judgment" under Fed. R. Civ. P. 59(e), in which he attempted to show genuine issues of material fact. The court denied the motion. **[AA 2:510, 517]** Brown died before filing an appeal. Gabriella Valdez, the personal representative of Brown's estate, was substituted as plaintiff. She appeals.

## DISCUSSION

According to Valdez, the district court erred in granting summary judgment to Mueller because there are genuine issues of material fact on (1) the ADA and NMHRA claim and (2) the FMLA and breach of contract claim. We disagree.

We review summary judgments *de novo*. *Adamson v. Unum Life Ins. Co.*, 455

---

[3] His complaint also included a breach of contract claim which asserted Mueller breached a contract to provide him FMLA leave even if it was not obligated to provide that leave under the terms of the FMLA itself.

- 3 -

F.3d 1209, 1212 (10th Cir. 2006).  Summary judgment is appropriate when there is no genuine issue of material fact and the undisputed facts, considered in the light most favorable to the nonmoving party, demonstrate the moving party's entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adamson*, 455 F.3d at 1212; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011).  However, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

### A.  The ADA and NMHRA Claims

Valdez first contends the district court erred in entering summary judgment for Mueller on the ADA "failure to accommodate" and "wrongful termination claims" as well as the NMHRA claims.  She argues there is a genuine issue of material fact as to whether it violated the ADA and NMHRA.  In her view, there are factual questions as to whether (1) Brown was a "qualified individual" who could have performed the essential duties of his job with reasonable accommodations, and (2) Mueller failed to engage in the interactive accommodation process required under the ADA.  We see no error.

The ADA prohibits discrimination against a "qualified individual" with a disability on the basis of that disability.  42 U.S.C. § 12112(a).  Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee,

- 4 -

unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). To establish a prima facie case of discrimination for failing to make reasonable accommodations, a disabled employee must show: (1) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (2) he was discriminated against because of his disability. *Mason v. Avaya Comms., Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004).

We use a two-part analysis to determine whether a person is a "qualified individual" under the ADA. *Davidson v. Am. Online*, 337 F.3d 1179, 1190 (10th Cir. 2003); *see* 42 U.S.C. § 12111(8). First, we determine whether the individual can perform the essential functions of the job. *Davidson*, 337 F.3d at 1190. If not, we then determine whether any reasonable accommodation by the employer would enable him to perform those functions. *Id.*

A reasonable accommodation "may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. § 12111(9). In addition, if the employee is unable to perform his job, with or without accommodation, an employer must consider reassignment to an available position as one form of accommodation. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998); *see* 42 U.S.C. § 12111(9)(B).

1.      Reasonable Accommodation

Valdez claims Brown could have performed the essential functions of his job if he had been provided with any one of several reasonable accommodations, such as allowing him to work from home, providing him with additional leave time, reassigning his duties to another employee or temporarily reassigning him to a different position. She seeks too much.

Most prominently, Valdez argues Mueller could have allowed Brown to work from home. But for most jobs, "physical attendance in the workplace is itself an essential function," *see Mason*, 357 F.3d at 1119; *Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000) ("Attendance is generally an 'essential' function of any job."), *overruled on other grounds by Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001). In his deposition, Brown conceded his job required physical attendance at the workplace. Although he testified he could use technology to "perform many of the essential functions of the warehouse manager job from home," he also acknowledged working from home would limit his ability to perform many aspects of his job. For instance, while at home, he could not perform either quarterly or random inventory counts. He could not interact with customers who came to the warehouse. He could not effectively supervise his staff because he could not confirm whether his employees had completed the tasks he had assigned to them. Mueller could have, as Valdez argues, delegated some of these tasks to others, but the ADA's command for reasonable accommodation does not require employers to reallocate essential employee duties. *See Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124-25 (10th Cir. 1995). Brown could not perform the essential functions

of his job from home. Therefore, this was not a reasonable accommodation.

Valdez also argues Mueller could have reasonably accommodated Brown with additional leave time. A leave of absence may be a reasonable accommodation as long as the employee's request states the expected duration of the impairment. *See Rascon v. US West Comms., Inc.,* 143 F.3d 1324, 1333-34 (10th Cir. 1998), *overruled on other grounds by New Hampshire v. Maine*, 532 U.S. 742 (2001); *Cisneros*, 226 F.3d at 1130. For example, when an employee seeks a leave of absence for treatment and has a good prognosis for recovery, a leave of absence is a reasonable accommodation. *Hudson v. MCI Telecomm. Corp.*, 87 F.3d 1167, 1168-69 (10th Cir. 1996). Conversely, when the employee seeks leave, but it is uncertain if or when he will be able to return to work, a leave of absence is not a reasonable accommodation. *Cisneros*, 226 F.3d at 1130 (noting the employee must provide "an *expected duration of the impairment"* which must be more definitive than the mere duration of the leave request).

Here, the record shows it was uncertain if or when Brown would sufficiently recover from his impairments to be able to return to work. He submitted two physician's notes describing his treatment for bronchitis, colon cancer, and fatigue. In the first note, his physician wrote he could return to work on February 8, 2007. Yet he was unable to return to work on that day. The second note stated he "may return to work on March 1[, 2007.]" (Aplt. App. Vol. 1 at 102.) In light of his diagnosis with colon cancer, his frequent absences, and his inability to return to work according to the earlier physician's note, it was uncertain he would be able to return to work on March 1, 2007. In addition, even if he had been able to return to work, neither note stated the impairment from his

cancer and other conditions would be resolved at that time. Quite to the contrary, both notes stated his cancer diagnosis remained unchanged.

Valdez also argues Mueller could have reasonably accommodated Brown by using either a temporary employee or an existing employee as a substitute for him. Requiring an employer to reallocate job duties to change the essential functions of a job is not a reasonable accommodation under the ADA. *Milton*, 53 F.3d at 1124-25. Therefore, Mueller had no obligation to do so. And, to the extent Valdez argues Mueller could have reasonably accommodated Brown through temporary reassignment, the district court correctly concluded he failed to specifically identify an appropriate available job vacancy as our precedent requires. *See Duvall v. Georgia-Pacific Consumer Prods.*, 607 F.3d 1255, 1263 (10th Cir. 2010); *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999).

Because Brown did not show a reasonable accommodation would allow him to perform the essential functions of his job, we agree with the district court that Brown was not a qualified individual[4] under the ADA and, consequently, Mueller did not wrongfully terminate him.

2.    The Interactive Accommodation Process

Valdez also argues Mueller was required to engage in an interactive process to

---

[4] The NMHRA prohibits employers from terminating "any person otherwise qualified because of . . . medical condition." *Trujillo v. N. Rio Arriba Elec. Co-op., Inc.*, 41 P.3d 333, 338 (N.M. 2001) (quoting N.M. Stat. Ann. § 28-1-7(A) (West 2011)). The New Mexico Supreme Court equates the ADA's definition of "qualified individual" with the NMHRA's "person otherwise qualified" definition. *Id.* Because we conclude Brown is not a qualified individual under the ADA, he is not a "person otherwise qualified" entitled to relief under the NMHRA.

determine whether a reasonable accommodation could enable Brown to perform the essential functions of his job. She further argues there is a genuine factual issue "as to whether [Mueller] took the necessary actions to attempt accommodation." (Appellant's Opening Br. 18.) Even assuming Mueller failed to adequately engage Brown in the process, however, this failure is not actionable discrimination under the ADA.

Under the ADA's implementing regulations, once a qualified individual informs his employer of a disability, the employer must then engage the employee in an interactive process to determine if there is a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o)(3); *see also Hendricks-Robinson*, 154 F.3d at 693. This interactive process encourages employers and employees to work together to identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working. *Id.* An employer must make a reasonable effort to explore the accommodation possibilities with the employee. *Id.* "The obligation to engage in an interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee." *Smith v. Midland Brake*, 180 F.3d 1154, 1172 (10th Cir. 1999). The interactive process ensures a reasonable accommodation is identified, if one is available. *See id.*

Despite its importance, however, the interactive process is only a means to an end. To recover under the ADA, a plaintiff must show "a reasonable accommodation was possible." *Id.* at 1174; *see also McBride v. BIC Consumer Prods.*, 583 F.3d 92, 101 (2d Cir. 2009) ("[A]n employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA."). Accordingly, an employer is not required to

engage an employee in a futile interactive process where, as we have concluded was the case here, no reasonable accommodation was possible.[5] *Id.* at 100-01.

### B. FMLA and Breach of Contract Claims

Valdez next contends the district court erred in entering summary judgment for Mueller on Brown's FMLA and breach of contract[6] claims. Even assuming Brown was entitled to FMLA leave, under the undisputed facts, Mueller provided him with the leave to which he was (or may have been) entitled. Thus, there was no interference or retaliation with Brown's requesting or taking of FMLA leave, and Mueller breached no contract to provide Brown with FMLA leave.

### 1. Interference

Valdez argues disputed material issues of fact bar summary judgment on the interference claim, to wit: whether (1) Brown exhausted his twelve weeks of FMLA leave

---

[5] Even so, as the Ninth Circuit has recognized, an employer's failure to engage in the interactive process will often make it difficult to resolve a case for the employer on summary judgment. In the Ninth Circuit's view, when the employer fails to engage in the interactive process, "it is not likely that an employer will be able to establish on summary judgment the absence of a disputed fact as to the existence of a reasonable accommodation." *Morton v. United Parcel Servs., Inc.,* 272 F.3d 1249, 1256 n.7 (9th Cir. 2001), overruled on other grounds by *Bates v. United Parcel Servs., Inc.*, 511 F.3d 974 (9th Cir. 2007) (en banc). Thus, even though an employer's failure to follow the interactive process is not an independent basis for liability under the ADA, employers are well advised to follow the process before concluding no reasonable accommodation is available.

[6] Brown argued Mueller was obligated to provide FMLA leave even though it employed too few employees at Brown's site to be required to provide Brown with FMLA leave. In his view, Mueller's actions in approving him for FMLA leave either (1) created a contract to provide Brown with FMLA leave or (2) should equitably estop Mueller from denying he was entitled to FMLA leave. For purposes of our analysis, we assume – without deciding – Brown was entitled to these benefits.

time prior to his discharge and (2) Mueller provided Brown with required notice of the leave time he had taken. She is mistaken.

To establish an FMLA interference claim, Valdez must show: (1) Brown was entitled to FMLA leave, (2) Mueller's adverse action interfered with his right to take FMLA leave, and (3) Mueller's action was related to his exercise or attempted exercise of FMLA rights. *See Campbell v. Gambro Healthcare*, 478 F.3d 1282, 1287 (10th Cir. 2007). Even assuming Brown was entitled to FMLA leave, to satisfy the second element (the "adverse action" requirement) of an interference claim, she must show Mueller prevented Brown from taking the full twelve weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave. *See id.* She fails to make this showing.

### *Inaccurate Leave Records*

Although Brown's response to Mueller's motion for summary judgment contested the exhaustion of his twelve-week FMLA leave, it failed to cite any materials in the record to substantiate a genuine issue of material fact on the accuracy of Mueller's leave records as Fed. R. Civ. P. 56(c)(1) requires.

Mueller's statement of undisputed facts in its motion for summary judgment repeatedly asserted Brown had exhausted his FMLA leave:

> 35. When Plaintiff brought in the doctor's note on January 24, 2007, he had already used 62 full days (12.4 weeks) of medical leave since February 1, 2006. Plaintiff alleges he was not informed these absences were "near the limit;" however, he admits that, regardless of what he would have been told, the leave from January 24 to February 8 was "medically necessary" and he "needed to take [the] leave."

36. On the morning of February 7, 2007, Mr. Benton sent Plaintiff a letter . . . stating: "This letter is to inform you that during the period of 1/31/06 through an indefinite time, you had leave designated as Family Medical Leave (FMLA). As of 2/1/07, you have exhausted twelve (12) weeks of leave, which is the maximum under the law for this twelve (12) month period." *Plaintiff does not dispute he had exhausted twelve (12) weeks of leave.*

37. As of February 7, 2007, the Absentee History Report . . . shows Plaintiff missed 71 full days (14.1 weeks) for intermittent medical leave since February 1, 2006. Plaintiff does not dispute he missed that many days for medical leave, and, on each of those days, he could not have performed all of the duties of his job.

(Aplt. App. Vol. 1 at 9-10.) In the pertinent paragraphs of his response, however, Brown failed to cite to any portion of the record showing a genuine dispute as to whether he had exhausted his FMLA leave:

20. Plaintiff disputes Paragraph 35 of Defendants' [undisputed facts]. Plaintiff testified that his doctor felt rest would do Plaintiff some good. Additionally, Plaintiff testified that he could have come to work during this period of time, though he would have been in pain.

21. Plaintiff does not dispute Paragraph 36, in that one of Defendants' absentee records showed that as of February 1, 2007, Plaintiff had exhausted twelve weeks of designated FMLA leave. In as much as Defendants contend otherwise, Plaintiff disputes Paragraph 36.

22. Plaintiff does not dispute Paragraph 37 of Defendants' [undisputed facts], in that one of Defendants' absentee records showed that as of February 7, 2007, Plaintiff had used 71 full days for intermittent designated FMLA leave. In as much as Defendants contend otherwise, Plaintiff disputes Paragraph 37. Plaintiff does dispute that he could not have

performed all of the duties of his job. Plaintiff testified that he could not have performed up to his expectations. (p. 366, l. 1-7, Ex B to Defendants' Motion for Summary Judgment.)

(Aplt. App. Vol. 2 at 279.) The first two of these three paragraphs fail to cite any part of the record. The third paragraph only cites portions of the record dealing with Brown's ability to perform his job duties. Even though these paragraphs show Brown disagreed with Mueller's factual assertion that he had exhausted his leave, they do not cite to any portion of the record, as required under Fed. R. Civ. P. 56(c)(1), to support the existence of a genuine dispute as to whether Brown exhausted his FMLA leave.

Nor, contrary to Valdez's assertion, does paragraph two of Brown's "Statement of Additional Undisputed Material Facts Which Preclude Summary Judgment" raise a genuine dispute on the accuracy of Mueller's recordkeeping:

2. Mr. Benton charged Mr. McGill with the responsibility of tracking Mr. Brown's FMLA usage for 2006. Mr. McGill's documentation, which he used to track Mr. Brown's FMLA leave, shows Mr. Brown used less time than documents Mueller is relying on to support their claim that Mr. Brown exceeded twelve weeks of FMLA leave.

(Aplt. App. Vol. 2 at 281-82.)

Despite the allegations in this paragraph, the record shows Brown exhausted his FMLA leave regardless of whether Mueller relied on McGill's records or its own official records. During his deposition, McGill acknowledged his own records were informal, and he was inconsistent in updating them when Brown missed work. These informal records showed Brown used less leave time than Mueller's official timekeeping records did; yet

- 13 -

even according to this more favorable accounting of Brown's leave time, he had still exhausted his twelve weeks of FMLA leave.

Significantly, Mueller's *official* timekeeping records stand unimpugned. To the extent Mueller relied on these official timekeeping records to support its position that Brown had exhausted his FMLA leave, Brown's attack on McGill's informal records failed to create a genuine issue of material fact as to whether he exhausted his FMLA leave.

While Valdez argues the inconsistency between the two sets of records by itself raises a genuine issue of material fact about the reliability of both sets of records, the issue is not whether the two sets of records agree; the issue is whether Brown exhausted his leave time. Because Brown exhausted his leave under both sets of records – including the unimpeached official records – the district court correctly concluded there was no genuine issue of material fact as to his exhaustion of his FMLA leave.[7]

---

[7] In passing Valdez argues Mueller incorrectly *calculated* Brown's leave time balance. Valdez's brief seems to argue only that Mueller's calculations were incorrect because the underlying data were incorrect. In Brown's rule 59 motion before the district court, however, he argued Mueller incorrectly applied the "rolling" method of leave time calculation. *See generally Thom v. Am. Std., Inc.*, No. 09-3507/3508, 2012 WL 162682, at *2 (6th Cir. Jan. 20, 2012) (describing the "rolling" method of leave time calculation). As we read Valdez's brief, she does not reassert this argument on appeal. Even if she did, however, Brown's argument came too late to raise a genuine issue of material fact because it was not made until after the district court granted Mueller's motion for summary judgment. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (noting a rule 59 motion is appropriate to seek reconsideration when the court has misapprehended the facts or a party's position, but it is not appropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing").

*Notice*

Valdez also argues Mueller interfered with Brown's FMLA rights because it failed to give him notice of the amount of time he had "taken within one to two business days of the requested time," as required under federal regulations. (Appellant's Opening Br. 32.) *See* 29 C.F.R. § 825.301. In her reply brief, Valdez concedes the notice is not strictly due within one to two days, but still argues the notice must be "given within a reasonable time after notice of the need for leave is given by the employee." (Appellant's Reply Br. 17.) Because Brown never made this argument before the district court,[8] we decline to consider it. *See Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").

Thus, there is no genuine issue of material fact on whether Mueller interfered with Brown's FMLA rights.

2.      Retaliation

Under our case law Brown doesn't appear to have a cognizable retaliation claim. If he does, it fails. A retaliation claim differs from an interference claim "with respect to the timing of the adverse action." *Campbell,* 478 F.3d at 1287. "A retaliation claim may be brought when the employee successfully took FMLA leave, was restored to [his] prior employment status, and was adversely affected by an employment action based on

---

[8] Valdez cites sections of the record where Brown asserted he had never received notice that he was either ineligible for FMLA benefits or that he had exhausted the leave time provided under FMLA, but fails to cite any portion of the record where Brown argued these failings constituted interference with his FMLA rights.

incidents post-dating [his] return to work." *Id.* at 1287-88. When, however, an employee

is denied restatement following leave, the claim is properly characterized as an

interference claim. *See id.* Because Brown never returned to work following his final

FMLA leave, it appears his claim is cognizable as an interference claim rather than a

retaliation claim.

Assuming arguendo, Brown could bring a retaliation claim, it fails for the same

reason as his interference claim. To state a prima facie case of retaliation, Valdez must

show (1) Brown engaged in a protected activity; (2) Mueller took an action that a

reasonable employee would have found materially adverse; and (3) there exists a causal

connection between the protected activity and the adverse action. *Metzler v. Fed. Home*

*Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

Valdez's argument on the first element of Brown's prima facie claim – the

"protected activity" element – duplicates the arguments she made on the interference

claim.[9] As already discussed, there is no genuine issue of material fact as to whether

Brown exhausted his FMLA leave. He did. At the time of his termination, he was not

engaged in a protected activity, and, thus, he has no prima facie case for retaliation.

---

[9] Valdez argues the district court erred because it "failed to take into account the issues addressed in [the interference claim section of her brief]. In other words, if Mueller's calculations were incorrect then Brown actually was engaged in protected activity at the time of his February 7 request for more [FMLA] leave time." (Appellant's Opening Br. 39.)

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge