FILED
United States Court of Appeals
Tenth Circuit

August 20, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

QUINN SMITH,

  Plaintiff–Appellant,

v.

MICHAEL W. WYNNE, Secretary,
Department of the Air Force,

  Defendant–Appellee.

No. 11-6195
(D.C. No. 5:07-CV-00598-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **LUCERO**, Circuit Judges.

Quinn Smith, a former civilian employee of the Department of the Air Force,

asserts that her termination was contrary to the Family and Medical Leave Act

("FMLA") and constituted unlawful gender and race discrimination under Title VII

_____

   [*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of the Civil Rights Act. We disagree, and, therefore, affirm the district court's decision denying her claims.

**I**

Smith is an African-American woman. In July 2000, she began working as a computer engineer at Tinker Air Force Base. On March 5, 2004, Smith filed a worker's compensation claim alleging an "on-the-job injury" due to months of "stress and pressure" from Michael Smith ("Supervisor Smith"). Three days later, plaintiff asked Supervisor Smith if she could take three weeks of leave to address her job-related stress. Supervisor Smith agreed. He permitted her to take a combination of annual and sick leave for the remainder of the month. Her leave began on March 10.

By March 31, 2004, Smith had exhausted both her annual and sick leave. She phoned Supervisor Smith to check in with him as previously arranged. The parties disagree about the substance of this conversation. According to the plaintiff, she told Supervisor Smith that she planned on taking more time, and she requested leave without pay (LWOP), which Supervisor Smith approved. Supervisor Smith asserts that he did not approve LWOP for her, and that he warned her she was "absent without leave" or AWOL.

The next day, Supervisor Smith sent Pam Moulin in human resources an email stating that plaintiff had told him "she was planning to be AWOL for a while." In this email, he also stated "I either need her or the position she is on because I have a

small staff here . . . what are my options?" Moulin responded that human resources would not take action until Smith had been AWOL for ten days.

Supervisor Smith annotated plaintiff as AWOL in the leave database. On April 1, 2004, plaintiff signed in remotely to the leave database and noticed that she was marked as AWOL. She called Supervisor Smith and told him that she had requested LWOP. The parties dispute whether he then informed Smith that her request for LWOP was denied. On April 8, 2004, Supervisor Smith removed the AWOL designation from the leave database.

On April 13, 2004, Supervisor Smith exchanged emails with Moulin in which he expressed a desire to begin the process of terminating plaintiff's employment. Moulin asked him if he had heard anything from Smith since their March 31, 2004 check-in phone conversation. He responded that he had not. Plaintiff contends this response was mendacious because she had spoken with Supervisor Smith on April 1 concerning her desire to be on LWOP.[1]

On April 14, 2004, plaintiff sent Supervisor Smith a letter stating that she had requested LWOP on March 31, 2004, and that he had approved her request. Four days later, however, Supervisor Smith sent plaintiff a memorandum advising her that "[a] review of your attendance record indicates that you have not reported for duty

---

[1] On May 3, 2004, Supervisor Smith repeated to human resources that he had not heard from or talked to plaintiff since she was designated AWOL on April 1.

since 1 April 2004. No word has been heard from you or from anyone on your behalf. No leave was requested and none granted."

The memo went on to advise plaintiff that if she was requesting special restrictions due to a medical condition, she should provide information concerning the condition from her doctor. Supervisor Smith attached a Work Restriction Evaluation form for that purpose. The memo also warned plaintiff that "if you fail to report for duty on a regular full-time basis or fail to furnish sufficient medical evidence to cover your absences, action may be taken to propose your separation from Air Force employment for excessive absence." (emphasis added.)

On April 21, plaintiff wrote to Supervisor Smith and to his supervisors, explaining that she had requested LWOP. On April 29, she submitted her medical records to Kathryn Reinhardt, an employee who was processing her worker's compensation claim, and had previously requested medical documentation from Smith in connection with the claim. The medical records Smith submitted included a "recommendations for duty" form dated March 5, 2004, indicating that she was able to "[r]eturn to work without restrictions." In addition, Smith attached a note requesting that Reinhardt "Please do not release" the records to Supervisor Smith or to her second-level supervisor. Acting on Smith's instructions, Reinhardt did not provide Smith's medical records to the officials who would subsequently terminate her employment.

- 4 -

On May 19, 2004, the Air Force issued to Smith a notice of proposed removal from government service. The notice cited Smith's "unauthorized absence and failure to request leave according to established procedures." It further advised Smith of her right to reply within twenty days. Smith never replied to the notice. On July 8, 2004, the Air Force removed her from federal service for unauthorized absences.

After exhausting her remedies with the Equal Employment Opportunity Commission ("EEOC") and obtaining a final agency decision from the Air Force Review Boards Agency, Smith filed an appeal with the Merit Systems Protection Board ("MSPB"). As a defense to her termination, Smith argued that the Air Force had wrongfully denied her requested leave under the FMLA. Following a hearing, an administrative law judge ("ALJ") concluded that the Air Force did not violate the FMLA, for two reasons. He explained that Smith

> did not have a serious health condition that prevented her from performing one or more of the essential functions of her position. Her medical records contrarily demonstrate that she was generally healthy and able to work. Second, even assuming arguendo that she had a serious health condition, she repeatedly ignored the agency's legitimate requests for a written medical certification.

The ALJ also rejected Smith's claims that the Air Force had discriminated against her based on her race, gender, and disability and had retaliated against her for filing a complaint with the EEOC. The ALJ's decision became final agency action when Smith did not request further board review. 5 U.S.C. § 7701(e).

This suit followed. The district court upheld the MSPB's decision regarding Smith's termination, and, exercising de novo review, granted summary judgment in favor of the Air Force on her discrimination claims. Smith now appeals both decisions of the district court. [2]

## II

## A

This is a "mixed" case, meaning that Smith presented both discrimination and non-discrimination claims to the MSPB and the MSPB issued a decision resolving all of her claims. Williams v. Rice, 983 F.2d 177, 179 (10th Cir. 1993). Concerning the discrimination claims, we review the district court's grant of summary judgment de novo, applying the same standard as the district court. Helm v. Kansas, 656 F.3d 1277, 1284 (10th Cir. 2011). Summary judgment is appropriate if the Air Force "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting the analysis, we "view[ ] all facts [and evidence] in the light most favorable to the party opposing summary judgment." Grynberg v. Total, S.A., 538 F.3d 1336, 1346 (10th Cir. 2008).

---

[2] In her district court complaint, plaintiff requested review of the MSPB's decision on her EEOC retaliation claim. It does not appear the district court specifically addressed this claim, and plaintiff has not presented argument concerning it on appeal. Accordingly, we do not further address this claim.

By contrast, we review directly the MSPB's disposition of Smith's FMLA defense, considering the agency decision and applying to it the more deferential, statutory standard:

> A MSPB decision must be upheld unless the reviewing court determines that it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.

Williams, 983 F.2d at 180 (quoting 5 U.S.C. § 7703(c)). In reviewing the MSPB's decision, this court "may not substitute its judgment for that of the MSPB. Under the arbitrary and capricious standard the MSPB's decision needs only to have a rational basis in law." Id. (citations and quotations omitted).

**B**

Smith argues that the Air Force unlawfully interfered with her assertion of her FMLA rights and retaliated against her for invoking these rights, and therefore, the MSPB's decision affirming her removal was arbitrary, capricious, and contrary to law.[3] Under the FMLA, an employee is entitled to "a total of 12 administrative workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition." 5 U.S.C. § 6382(a)(1)(D).

---

[3] The ALJ found that Smith had "not demonstrated that the [MSPB] treats [FMLA] violations as fitting within the scope of the harmful error defense." But he nevertheless considered Smith's FMLA allegations as an affirmative defense to her termination. We also assume, for purposes of this decision, that Smith's allegations provide such an affirmative defense.

- 7 -

The Air Force responds with two threshold arguments. It argues, first, that plaintiff waived her FMLA interference and retaliation claims by failing to present them to the MSPB. Second, the Air Force contends that the United States has not waived its sovereign immunity for freestanding FMLA retaliation and interference claims brought by federal employees like Smith, and that a federal court therefore lacks jurisdiction to entertain them. See, e.g., Russell v. U.S. Dep't of the Army, 191 F.3d 1016, 1018-19 (9th Cir. 1999).

**1**

We need not delve deeply into the Air Force's waiver and jurisdictional challenges, because they are based on an unnecessarily narrow view of Smith's assertion of FMLA rights in these proceedings. The ALJ who reached the MSPB's decision was broadly charged with determining whether Smith appropriately requested leave and whether her removal was "appropriate," and he considered her FMLA allegations as a defense to her termination. Although Smith's appellate briefing is not entirely clear on this point, we do not understand her arguments to be an attempt to assert freestanding FMLA interference and retaliatory conduct claims against the Air Force. Rather, plaintiff continues to assert her FMLA rights as an affirmative defense to her termination. Viewed in this way, Smith neither waived freestanding FMLA "claims" by failing to present them before the MSPB, nor attempted to assert freestanding FMLA damage claims giving rise to sovereign immunity concerns.

- 8 -

**2**

We must affirm the MSPB's decision notwithstanding either of Smith's FMLA theories. To prevail on an FMLA interference claim, an "employee must demonstrate by a preponderance of evidence . . . [an] entitlement to the disputed leave." Smith v. Diffee Ford-Lincoln Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002). Smith must show that she had a "serious health condition": "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 5 U.S.C. § 6381(5). However, the only evidence before us pertinent to Smith's health are the records she submitted to Reinhardt. Having reviewed this evidence, we are compelled to agree with the ALJ's conclusion. The records in question include only three or four outpatient visits for treatment of anxiety, depression, and situational stress. Most significantly, they include a recommendation dated March 5, 2004 that plaintiff be "returned to work without restrictions." Thus, the ALJ's conclusion that plaintiff failed to demonstrate that she had a serious health condition is supported by substantial evidence.

Because Smith has failed to meet her burden, we need not decide whether to adopt the Sixth Circuit's rule in Sorrell v. Rinker Materials Corp., 395 F.3d 332 (6th Cir. 2005) as she urges. See id. at 337 (holding that an employer cannot assert problems with a medical certification as grounds for denying FMLA leave if the employer has never notified the employee of the problem). Relevant here is the

evidence in the record, not whether Smith adequately documented her need for leave to the Air Force.

**3**

We next turn to Smith's retaliation argument. As an initial matter, we are not convinced that Smith has an FMLA retaliation claim—rather than simply an interference claim—under our case law. See, e.g., Valdez v. McGill, 462 F. App'x 814, 822 (10th Cir. 2012) (unpublished). An FMLA interference claim is based on an employer's alleged denial of an employee's FMLA rights, including a wrongful refusal to grant FMLA leave or to reinstate the employee following such leave. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287-88 (10th Cir. 2007). In contrast, a retaliation claim typically accrues when an "employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." Id. Even assuming that Smith could bring a retaliation claim, it must fail for the same reasons as her interference claim: the record does not support Smith's contention that she had a serious medical condition triggering the protections of the FMLA.[4]

---

[4] This is not to suggest that every employee seeking to prevail on a retaliation theory must affirmatively establish her statutory eligibility for leave. For instance, an employee fired immediately upon requesting protected leave may have a valid retaliation cause of action, regardless of her ultimate eligibility. In the present scenario, however, the conduct in question is Smith's taking of an unapproved leave of absence. Accordingly, Smith must demonstrate that she was entitled to leave

(continued)

- 10 -

## C

Plaintiff also seeks review of the district court's order granting summary judgment to the Air Force on her race and gender discrimination claims. She relies on circumstantial evidence of discrimination, using the familiar McDonnell Douglas v. Green, 411 U.S. 792, 802-05 (1973), framework to establish her claim:

> This three-step analysis first requires the plaintiff to prove a prima facie case of discrimination. If plaintiff establishes a prima facie case, the burden of going forward shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext.

Adamson v. Multi Community Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008) (quotation and citations omitted).

The Air Force concedes that Smith met her prima facie burden because, as an African-American and a woman, she belongs to two protected classes, and she suffered an adverse employment action. Likewise, the Air Force met its burden of production by presenting evidence that it legitimately terminated Smith's employment for her failure to submit medical documentation to excuse her prolonged unauthorized absence. We therefore turn to the third step of the McDonnell Douglas

---

under the FMLA in order to state a prima facie case, see Metzler v. Fed. Home Loan Bank, 464 F.3d 1164, 1171 (10th Cir. 2006) (requiring "protected activity"), and to overcome the Air Force's assertion that its reasons for terminating her were not illegitimate. Id.

analysis: whether Smith demonstrated that the Air Force's explanation for its actions was pretextual.

Viewing the evidence in the light most favorable to Smith, as we must, there appears to be a genuine factual dispute concerning whether she initially requested and was provisionally granted LWOP rather than AWOL. Smith also points to evidence of procedural irregularities in Supervisor Smith's dealings with the human resources. She complains that Supervisor Smith lied to Moulin when she asked him on April 13, 2004, whether he had heard anything from the plaintiff, and again on May 3, 2004, when Supervisor Smith stated to Moulin that he had "not heard from or talked to [plaintiff] since she was placed on AWOL"—even though he talked to Smith on April 1 after he put her on AWOL, not before. In general, evidence of such "procedural irregularities," including "deviations from normal company procedure," support of finding of pretext. Garrett v. Hewlett-Packard, 305 F.3d 1210, 1219-20 (10th Cir. 2002).

But despite suggesting that Supervisor Smith was adverse to her interests, none of the instances to which Smith points demonstrate pretext going directly to the Air Force's decision to terminate her employment. Regardless of any early evasion, by April 18, 2004, Supervisor Smith had made it clear that plaintiff could take LWOP for a medical condition, if she satisfied and returned the Work Restriction Evaluation. And on May 19, 2004, the Air Force again warned Smith that she was in danger of

- 12 -

being removed from employment because "[l]eave has not been requested and medical documentation has not been provided."

Smith argues that Supervisor Smith "knew" she "submitted medical records," to Reinhardt, but purposefully ignored her attempt at documentation. But Smith points only to evidence suggesting otherwise—i.e. Reinhardt's statement that she did not advise Supervisor Smith about the medical documentation. Thus, Smith has simply failed to cast doubt on the reason asserted for her termination: her failure to provide authorization for her extended absence from work.

## III

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge